837 So.2d 443 (2002)
Robert THOMAS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-3469.
District Court of Appeal of Florida, Fourth District.
November 20, 2002.
Rehearing Denied February 28, 2003.
*444 Carey Haughwout, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Richard E. Doran, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
We affirm appellant's convictions for second degree murder and leaving the scene of an accident with death or serious bodily injury. We reverse appellant's conviction for driving while license suspended and causing death and remand with instructions to reduce this conviction to misdemeanor driving while license suspended. We write mainly to discuss appellant's contention that the trial court erroneously admitted testimony of a law enforcement officer which gave an improper opinion on the ultimate issue of appellant's guilt or innocence.
In March 1998, appellant, Kenny Brown, and Bruce Quinton were building a drainage field in the backyard of the home where appellant lived with his girlfriend, Julie Brown. Kenny Brown is Julie's brother. Bruce Quinton was an old friend of Julie's family. On the morning of March 7, 1998, Julie took appellant's van to work, but later that day, appellant picked up the van at her workplace to retrieve some supplies for the drainage field project.
Julie left work around 4:00 p.m. but stopped at a bar to have six doubles before returning home. Kenny, Bruce, and appellant were all drinking while working that day. At approximately 9:00 p.m., Kenny and Bruce left the house and appellant said he was going to give them a ride home. Julie went to bed. When she woke up at around 11:00 p.m., she went into the living room and saw appellant and Bruce on the couch fighting. Appellant was on top of Bruce with his hands around Bruce's neck; Bruce was yelling that appellant smoked crack. Julie told appellant to stop choking Bruce. He stopped and Bruce left. Upset that Bruce had accused him of smoking crack, appellant threatened to hit Bruce with his van and break his legs. Julie did not respond because she did not think appellant was serious. Appellant walked out the front door, got in the van, and drove down the street. A few minutes later, he returned home, saying, "I got him, baby. I got him, baby. I think I killed him."
Appellant then asked Julie for a ride to a friend's house. Julie drove him there in her Mustang. Afterward, Julie returned home and went to bed, hoping that what appellant said was not true. She woke up a little while later to the sound of knocking on her front door. Her mother's boyfriend, Bob Pinto, told her there had been an accident and that Bruce was killed. Julie left a note for appellant to call her at her mother's house and went to the scene. She admitted that she did not advise the police of appellant's whereabouts when she was questioned and was not truthful with them because she wanted to protect appellant. At trial, she explained that her conscience led her to finally tell the whole story.
Other witnesses testified to hearing appellant, Julie, and Bruce arguing that *445 night about appellant smoking crack; seeing appellant's van traveling in the same direction as Bruce walked; hearing a car accelerate while coming down the street with little or no braking, followed by a crash; and later seeing appellant's damaged van parked with the front end facing the house instead of the street, as was its usual position in the driveway.
Trooper Rodney Hylton, the lead investigator, interviewed Julie. She eventually told him where he could find appellant. When Sergeant Richard Glass went to that location around 6:00 a.m. the following morning, he found appellant there sleeping on the couch. Appellant agreed to accompany the sergeant outside, where the officer read him his Miranda rights and questioned him. At first, appellant was cooperative. However, when Sergeant Glass asked him how he got to his friend's house, his temperament changed and he replied, "Why don't you figure it out. You know how far I live from here." When Sergeant Glass advised appellant that Bruce had been killed in a hit and run collision in appellant's van, appellant did not respond or show any remorse or surprise. A key to the van was found in appellant's pocket. Expert witnesses testified that a headlight lens fragment found at the scene matched the van's broken headlight; DNA found on the van's headlight belonged to the victim.
At trial, defense counsel cross-examined Trooper Hylton about whether he had reason to believe that Julie, rather than appellant, was the driver of the van that struck and killed the victim. The following exchange occurred:
[Defense Counsel]: So then it would be fair to say then that you had a question about your initial assumption that Robert Thomas was driving the van; didn't you?
[Witness]: No, I don't think so. The purpose of that question and the purpose of that deposition was because I knew that the morning that I took her statement, Julie's statement, she was not telling me everything that was to be told.
* * *
[Defense Counsel]: And so you totally discounted the possibility that Julie Brown could have been the driver of that vehicle?
[Witness]: Yes.
[Defense Counsel]: Is that what you're telling us?
[Witness]: Yes.
* * *
[Defense Counsel]: My question is: You totally discounted that Julie Brown could have been the driver of that vehicle; didn't you?
[Witness]: Yes, sir.
[Defense Counsel]: Despite what you have learned during the statement?
[Witness]: Yes, sir.
At the end of cross-examination, the following occurred:
[Defense Counsel]: Trooper, isn't it a fact that when Julie Brown was issued this subpoena you had real concerns about whether you had the right person in custody; isn't that the real truth?
[Witness]: No, sir.
[Defense Counsel]: No, sir? You had no doubt in your mind, huh, is that what you're telling this Court?
[Witness]: Yes, sir.
On redirect examination of Trooper Hylton, the following occurred:
[Assistant State Attorney]: You had the weekend to listen, to consider some possibilities. And my questions [sic] is: Have you wavered in your conviction that this defendant was the driver of that van on that morning?

*446 [Defense Counsel]: Objection. Improper question. Could we approach?
The Court: Sure.
During a sidebar conference, the following occurred:
[Defense Counsel]: Judge, I move for a mistrial. This is an improper question. It calls for this officer to make the ultimate conclusion of the case and causes problems for the jury.
The Court: Okay.
[Assistant State Attorney]: He's an expert. He's the lead investigator in this case. And [defense counsel] spends a great portion of the voir dire and opening statements saying this is Trooper Hylton's opinion in what happened in this case, in letting him be here today. He also covered in direct examination on Friday's cross examination.
The trial court overruled the objection and denied the motion for mistrial. Thereafter, the state continued its re-direct examination of the trooper:
[Assistant State Attorney]: Having had the weekend to consider the questions you were asked on cross examination, have you wavered in your conviction that this defendant was the driver of that van?
[Witness]: No, sir.
Appellant argues on appeal that the trial court erred by allowing Trooper Hylton to state his opinion on the ultimate issue of guilt and denying appellant's motion for mistrial. The state's response is three-fold. First, the state contends that Trooper Hylton did not give an opinion on an ultimate issue of guilt or innocence because appellant's status as the driver of the van was not the ultimate issue in this case. Second, the state argues that even if Trooper Hylton's testimony did concern the ultimate issue of guilt, defense counsel opened the door to such testimony on cross examination. Finally, the state contends that any error in admitting the testimony was harmless.
It is well established that a witness's opinion as to the guilt or innocence of the accused is not admissible. See Martinez v. State, 761 So.2d 1074, 1079 (Fla.2000). In Martinez, the supreme court explained that a witness' opinion of guilt testimony impermissibly invades the province of the jury. It further noted that "there is an increased danger of prejudice when the investigating officer is allowed to express his or her opinion about the defendant's guilt ... [it] could convey the impression that evidence not presented to the jury, but known to the investigating officer, supports the charges against the defendant." Id.(citing United States v. Young, 470 U.S. 1, 18-19, 105 S.Ct. 1038, 84 L.Ed.2d 1(1985)).
Under the facts and circumstances of this case, Trooper Hylton's testimony that he believed appellant was the driver of the van amounted to an opinion that appellant was guilty of the charged offenses. This is so because the circumstantial evidence strongly indicated that the van was the weapon used to strike and kill the victim. See Sosa-Valdez v. State, 785 So.2d 633, 635 (Fla. 3d DCA 2001) (holding that remarks by lead detective that the robbery victim was not involved in some sort of set up constituted reversible error because such testimony was equivalent to the detective giving his opinion that the defendants were guilty, since their entire defense was predicated on the theory that the victim had staged his own robbery).
We thus conclude that admission of Trooper Hylton's testimony was error. However, based on our review of the record, we agree with the state's contention that such error was invited by the defense during its cross examination of the trooper. Defense counsel repeatedly asked the Trooper Hylton whether he was sure appellant was the person who was driving *447 the van. Though this line of questioning was no doubt calculated to highlight deficiencies in the trooper's investigation, it nonetheless opened the door to the state's redirect examination clarifying the trooper's position, based on his investigation.
"`As an evidentiary principle, the concept of `opening the door' allows the admission of otherwise inadmissible testimony to `qualify, explain, or limit' testimony or evidence previously admitted.'" Overton v. State, 801 So.2d 877, 900 (Fla.2001)(quoting Ramirez v. State, 739 So.2d 568, 579 (Fla.1999)). "The notion of `opening the door' is premised on `considerations of fairness and the truth-seeking function of a trial.'" Id. (quoting Ramirez, 739 So.2d at 579). Here, the state's questions on redirect examination did not exceed the scope of cross examination and related back to the trooper's previous testimony. As such, the testimony was properly admitted. See Hodges v. State, 595 So.2d 929, 932 (Fla.1992), vacated on other grounds, 506 U.S. 803, 113 S.Ct. 33, 121 L.Ed.2d 6 (1992), reaff'd on remand, 619 So.2d 272 (Fla.1993)(holding that the defense opened the door to prosecutor's questions on redirect examination about the prosecutor's personal belief that the witness was untruthful during his initial interview when questioning the detective about the interview).
With respect to appellant's final point on appeal, we accept the state's concession at oral argument that appellant's conviction for driving while license suspended and causing the death of another human being cannot stand and should be reduced to misdemeanor driving while license suspended. Here, as a result of Bruce Quinton's death, appellant was convicted of the offenses of second degree murder, pursuant to section 782.04(2), Florida Statutes, and driving while license suspended and causing death, pursuant to section 322.34(6), Florida Statutes. Double jeopardy principles prohibit convicting and sentencing appellant for the two homicide offenses arising out of a single death. See State v. Cooper, 634 So.2d 1074, 1074-75 (Fla.1994)(holding that a defendant cannot be convicted and sentenced for both DUI manslaughter and driving while license suspended and causing death where there is only a single death, but noting that the defendant can be convicted of the lesser offense of driving while license suspended); Houser v. State, 474 So.2d 1193, 1196 (Fla.1985)(holding that, based on double jeopardy principles, only one homicide conviction and sentence may be imposed for a single death); Pierce v. State, 718 So.2d 806, 810 (Fla. 4th DCA 1997)(holding that double jeopardy prohibited convicting defendant of both causing death while driving with suspended license and vehicular homicide).
AFFIRMED in part; REVERSED in part and REMANDED with instructions to reduce Count III (third degree felony driving with suspended license and causing death) to misdemeanor driving with a suspended license.
WARNER and FARMER, JJ., concur.