932 So.2d 1283 (2006)
Mark KOLP, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-628.
District Court of Appeal of Florida, Fourth District.
July 19, 2006.
James S. Elkins of James S. Elkins, P.A., West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Monique E. L'Italien, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
In a trial on three counts of attempted second-degree murder with a firearm, the State produced evidence that defendant had fired his weapon three times at two men. Both men were called to testify about the event. In the testimony of one, the following ensued:

Q. Yeah, tell the jury what you guys recovered.

A. Recovered three empty casings, which were shot, and then I think it *1284 was two more that were not shot, and they were hollow-points.

Q. What does that mean?

A. That means that the centers of them were carved out. Like, usually, hollow-points are for killing, you know? If you don't[e.s.]
At that point defense counsel objected to this unqualified witness being allowed to offer opinion evidence as to the use of hollow-point bullets, which the trial court overruled. Later in cross-examination, defense counsel asked the same witness the following:

Q. You obviously have knowledge about firearms when you were describing the hollow-point bullets, right?

A. I mean, who doesn't know about them. You watch movies, right?
Even later in the trial, the State questioned defendant on cross-examination about hollow-point bullets as follows:

Q. Okay. And you loaded this gun with hollow-point bullets.

A. Yeah, hollow-points. They're hollow-points for a reason.

Q. So, for what reason?

A. The hollow-points are for a reason, and if I'm in my house and someone breaks in and I shoot somebody or I'm going to have to shoot somebody, I don't want a bullet to go through that person, through the wall, and kill my son in the other room.

Q. Okay.

A. That's what a hollow-point is for.
Defendant was convicted of the three counts of attempted second-degree murder with a firearm as charged. On appeal the only issue is the admissibility of the testimony of the witness that hollow-point bullets are for killing.
Initially, we conclude that the testimony was not admissible under section 90.701, Florida Statutes (2005). In Fino v. Nodine, 646 So.2d 746 (Fla. 4th DCA 1994), we held that the kind of opinion testimony by lay witnesses admissible under section 90.701 is usually limited to things related to perception: e.g., "distance, time, size, weight, form and identity." 646 So.2d at 748-49. The testimony about the purpose of hollow-point bullets is none of these things. The testimony is properly characterized as speculative. Allowing this testimony from the witness that the purpose of hollow-point bullets is only for killing was therefore error, but the issue is whether it prejudiced the outcome.
Defendant testified at trial. He said that he was visiting the house where his 14-year old daughter was living with his former fiancée. He had just learned that a man he knew to be a violent, crack cocaine addict was also staying in the house. He said that he has had a permit to carry a firearm as a concealed weapon for 12 years and that he is a very good shot with a pistol. He wore the pistol that night in his shoulder holster because he would be riding his motorcycle into the western part of the county. When the altercation began, the man he knew to be violent came at him with a knife. The other man told the knife-wielder to "finish it." Defendant then purposefully fired two shots into the air to warn them off but, because the pistol has a "hair" trigger, accidentally discharged a third shot. After retreating into the house for a moment and then reappearing, the man he believed violent grabbed his hand with the gun, while the other man grabbed him around the neck. The three wrestled on the ground, and one of them took the gun from his hand. Defendant then left.
*1285 The testimony of the two men was decidedly to the contrary, portraying defendant as the aggressor. The witness testifying about the purpose of hollow point bullets was one of those two men. If believed by the jury, their testimony was enough to convict defendant of firing his weapon at the two men in an effort to cause mortal injury.
The charge was attempted second-degree murder, so purpose and intent and motive were everything. Was defendant attempting to defend himself against the aggression of the two men, thus using his weapon merely to warn them off? The jury was left with a pure credibility issue as to subjective intent, for the essence of the charge against defendant related to his motive in firing his weapon. The outcome turned on all the tangible and intangible factors affecting whom the jury should believe.
It is impossible to find beyond a reasonable doubt that this testimony had no effect on the jury prejudicial to defendant. See Goodwin v. State, 751 So.2d 537, 540 (Fla.1999) (harmless error analysis requires appellate courts first to consider nature of error and then any effect error had on trier of fact). We cannot say with any certainty that the error in admitting the testimony about the purpose of hollow-point bullets was harmless.
Reversed.
STONE and MAY, JJ., concur.