993 So.2d 157 (2008)
Laurie BARTLETT, Appellant,
v.
STATE of Florida, Appellee.
No. 1D07-1208.
District Court of Appeal of Florida, First District.
October 29, 2008.
Nancy A. Daniels, Public Defender, and Steven L. Seliger, Assistant Public Defender, Tallahassee, for Appellant.
Bill McCollum, Attorney General, and Philip W. Edwards, Assistant Attorney General, Tallahassee, for Appellee.
BROWNING, C.J.
Laurie Lynn Bartlett (Appellant) was charged with the second-degree murder of her live-in boyfriend, Ernest Lamar, arising from the stabbing of the victim with a knife. Pursuant to Florida Rule of Criminal Procedure 3.201, the defense filed notice of intent to rely on self-defense based on the "battered-spouse syndrome." The jury found Appellant guilty of the lesser-included offense of manslaughter, and she was sentenced to ten years' incarceration, to be followed by five years' probation. Appellant argues that the trial court abused its discretion in allowing the primary detective in this case to testify that before he obtained a warrant for Appellant's arrest, he ruled out the possibility that the killing was done in self-defense. Concluding that it was error to allow the detective to opine to the jury that he had ruled out self-defense, and that the State has not met its burden under State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986), to show there is no reasonable possibility that the error affected the verdict, we are constrained to reverse Appellant's conviction and sentence and remand for a new trial.
Investigator Mark Walton was the Bay County Sheriff's Department case agent responsible for investigating Appellant's case. Walton observed Appellant and *158 briefly spoke to her at the trailer where the stabbing occurred. Appellant was crying and seemed to be upset but did not appear to have any physical injuries. A number of photos were taken of the stabbing scene, which were published without an objection. With Appellant's permission, Walton looked inside the trailer where Mr. Lamar's body was located. At the trial, Walton was shown photos of the crime scene. He identified a single stab wound in the victim's chest as the apparent cause of death. He explained certain details relating to the crime scene and the location of Mr. Lamar's body. The prosecutor asked Walton if he is the individual who had signed the complaint, and he answered "yes." Walton testified that he had written "murder" on the complaint as the crime in question. When questioned as to whether he had to rule out self-defense in signing the complaint, Walton answered "yes." When the State asked Walton why he had ruled out self-defense, Appellant's attorney objected because the question called for "opinion, speculation." The court sustained the objection. Next, the State approached the bench and argued as follows:
The new self-defense law requires them to make that particular finding before they sign the complaint, they have to rule it out before, so it's part of the statutory requirement for him to be able to sign that complaint. He should be able to testify what went into his thinking process before he made that decision.
The trial judge changed his mind, stating:
That is a requirement, then as long as you are going to ask him the facts that he relied on, not just as to his speculation, then the objection is overruled, so rephrase your question.
The State then asked Walton what facts and evidence he had observed that led him to rule out self-defense. He testified:
When I first got to the scene I went in and looked at Mr. Lamar's body. The stab wound, which is located about here, you could look at it and see with the naked eye it was a very significant downward angle. The knife would have had to go in at an angle like this, just sort of common sense. Anybody looking at it would have been able to deduce that. The original explanation for the wound was that he had been walking down the hallway, he had tripped, and that the knife had gone into his [sic], that he had basically accidentally fallen on the knife. He was supposed to have been carrying a plate of pizza with the knife in one hand and that's when this was supposed to have occurred as he walked down the hallway. This would have meant that he would have taken the knife and gone at a severe downward angle into his own chest and that did not match that statement. So I had this to begin with, this story which was inconsistent with the facts at the scene. We started working from there and, in fact, later found the knife that was used to cut the pizza that night, which was a completely separate knife from the one that stabbed Mr. Lamar. There were no traces of the pizza on the knife that stabbed Mr. Lamar. Only his own blood up to the hilt of the knife.
In my experience, um, with the numerous occasions that I have been called for fights involving weapons or any kind of altercation between people, someone who is simply trying to ward off an aggressor with a knife
Defense counsel objected because the State was "going into war stories" that were not relevant. The objection was overruled. Walton continued testifying:

*159 [I]n my experience the knife is held out to ward someone off. This wouldn't explain this wound. This wound came from someone who brought the knife down into his chest with a great deal of force, making it not an accident. The inconsistent stories with the evidence, which continued up until the end to be inconsistent with the evidence. The evidence would show that a knife, that someone took a knife and used a great deal of force to enter it into Mr. Lamar's body at a downward angle and the absence of any kind of wounds that I observed on [Appellant] led me to believe that this was not a self-defense situation. In addition to the fact that we had two witnesses that advised in their statements
After defense counsel objected on hearsay grounds, the prosecutor cut off any further statement by Walton on direct examination.
On cross-examination, Investigator Walton reiterated that he had observed a single stab wound in the upper chest area. He noted that at the autopsy, several "poke" wounds were described. Walton testified that these wounds indicated that someone had poked Mr. Lamar with some type of instrument that did not break the victim's skin. These poke wounds were not evident to Walton at the crime scene. Two knives were found at the site, one on the living-room coffee table and the other between the couch cushions. One of the knives had pizza sauce on it, and the other had what appeared to be blood on it. Walton acknowledged that in ruling out self-defense, he had assumed that Mr. Lamar was standing upright when he was stabbed. When he was asked whether the downward angle of the wound could be explained if Mr. Lamar, as the aggressor, had lunged or leaned forward toward Appellant, with a level extension of the knife, Walton testified he did not believe that was the case. On redirect, when Walton was asked why he did not agree with the defense's hypothesis, he testified:
Like I said, two things that I believe why that does not work, because, of course, I had to try to consider that. He would have to run at her with enough force sufficient enough to impale himself completely with that knife, which means the full weight of his body would be coming at her and she would have to be supporting that quite a bit. That's my first issue with it, with that hypothesis. It was a very deep angle so he would almost have to be, the top half of his body would almost have to be parallel to the floor, which does not seem real reasonable. The other problem I have with it is a statement that [Appellant] made in one of her statements that she made on tape. Um, in talking to Captain Stanford, he asked her: And did he run into you before, he saw you with the knife before he run [sic] into you or did he know you had the knife? I don't even know if he knew I had it but what he did, he came at me, I just threw my hands up and I said I can't take no [sic] more and I come [sic] down, both my hands, and that's when he just grabbed himself. And she was referring to here when he was grabbing himself about grabbing the wound.
The questioning of witness Walton ended.
Appellant contends that the trial court's initial ruling sustaining the objection to the question of why Investigator Walton had ruled out self-defense is correct. Section 776.032(2), Fla. Stat. (2006), states:
A law enforcement agency may use standard procedures for investigating the use of force as described in subsection (1), but the agency may not arrest the person for using force unless it determines *160 that there is probable cause that the force that was used was unlawful.
Appellant notes that this subsection of the statute is not a substantive change in how the police investigate a case. Before any police officer can sign a criminal complaint, the officer must have probable cause to believe a crime has been committed. See Amend. IV, U.S. Const.; § 901.02, Fla. Stat. (2006); Fla. R.Crim. P. 3.120; Johnson v. State, 660 So.2d 648 (Fla.1995); Crain v. State, 914 So.2d 1015, 1022 (Fla. 5th DCA 2005). In a homicide, an officer cannot properly sign a criminal complaint if the evidence shows the killing was justified. In any event, the new section of the self-defense law does not authorize an officer to testify about this finding. What Walton did was to talk about the facts he had observed or learned from other sources before concluding that self-defense was not a viable defense in Appellant's case. In effect, the State's eliciting the challenged testimony encroached upon the jury's vital task to determine whether Appellant had acted in self-defense.
Section 90.701, Fla. Stat. (2006), of the Florida Evidence Code states:
90.701 Opinion testimony of lay witnesses.If a witness is not testifying as an expert, the witness's testimony about what he or she perceived may be in the form of inference and opinion when:
(1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness's use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
(2) The opinions and inferences do not require a special knowledge, skill, experience, or training.
Based on this evidentiary limitation, Investigator Walton's testimony was clearly objectionable. In support of this conclusion, Appellant cites Kolp v. State, 932 So.2d 1283 (Fla. 4th DCA 2006), in which Kolp was convicted of attempted second-degree murder. During the trial, one of the victims of the shooting testified he had recovered hollow-point casings, meaning that their centers were carved out, "Like, usually, hollow-points are for killing, you know?" Id. at 1284. Kolp's counsel objected to this unqualified witness' being allowed to opine as to the use of hollow-point bullets for killing; the objection was overruled. See id. This was held to be speculative and inadmissible under section 90.701 because the statute usually limits testimony to the witness' perception, e.g., as to "distance, time, size, weight, form and identity." Fino v. Nodine, 646 So.2d 746, 748-49 (Fla. 4th DCA 1994); Kolp, 932 So.2d at 1284. The witness' opinion testimony was speculative and did not meet the criteria in Fino. See Essex v. State, 917 So.2d 953, 957 (Fla. 4th DCA 2005) (concluding that detective's opinion testimony regarding the mirroring and consistency of statements by the defendant's niece and the victim improperly bolstered the State's witnesses and was inadmissible hearsay, where the niece and the victim both testified at the trial, allowing the jury independently to determine whether their statements were consistent).
Similarly, whether self-defense was a viable defense for Appellant was not personally observed by Investigator Walton. Cf. Miller v. State, 934 So.2d 580, 582 (Fla. 3d DCA 2006) (finding no abuse of discretion in burglary and theft trial, where officer was allowed to testify, based on his personal observations rather than on his expertise, that when the defendant was arrested several days after the offenses, a bruise defendant had sustained was already fading and a laceration he had sustained seemed to be healing).
*161 The defendant in Nardone v. State, 798 So.2d 870 (Fla. 4th DCA 2001), was convicted of aggravated assault with a deadly weapon, which was identified as an aluminum strip attached to a flower planter. Nardone, resisting, grabbed the strip as orderlies tried to drag him in a sheet to a "quiet room" in a recovery clinic, and he used the strip to try to strike an orderly near the face before the strip was wrestled from Nardone. See id. at 871-72. At trial, the police officer who had interviewed the eyewitnesses and recovered the aluminum strip was asked by the prosecutor if the strip could be used to cause serious bodily injury. After a defense objection on grounds that the jury was supposed to decide whether the object was a deadly weapon, and that the answer would be speculative, confusing, and more prejudicial than probative, the officer was asked about her training and experience with weapons and whether she was familiar with weapons and had seen blunt objects cause great bodily harm. The officer answered "yes." She opined that the aluminum strip could cause great bodily harm. See id. at 872. The State asserted that this testimony was admissible as lay opinion based on the officer's familiarity with the type of object in question. See id. at 873.
However, citing section 90.701, the Fourth District Court in Nardone noted that a lay witness' opinion testimony is allowed only if it is based on "what the witness has personally observed." Id.; see Fino, 646 So.2d at 748. The officer did not witness the assault and did not base her conclusions (as to how the aluminum strip was used) on personal observations. "Her opinion that the object could be used as a deadly weapon was speculative." Nardone, 798 So.2d at 873. As to the State's argument that the officer's testimony was properly admitted as expert opinion due to her specialized training and experience with weapons, the district court noted the lack of a predicate, given the absence of evidence at that point in the trial concerning how Nardone had actually used the strip. The State made no showing that a factual determination of whether the aluminum strip was a deadly weapon was beyond the scope of an ordinary juror's knowledge and understanding, as is required under section 90.702, Florida Statutes, infra. See Nardone, 798 So.2d at 873-74. Finding an abuse of discretion and the State's failure to show harmless error, the district court reversed Nardone's judgment/sentence and remanded. See id. at 874-75.
Appellant compares the challenged testimony in Nardone to the testimony of Investigator Walton. That is, by allowing the State's questions and Walton's detailed answers on a matter within the realm of an ordinary juror's knowledge and understanding, the trial court improperly invaded the province of the jury as the factfinder and allowed the detective to serve as a fact-finder during the guilt phase by determining that self-defense was not a viable defense for Appellant. Allowing this testimony to be adduced was error.
The State contends that it was not an abuse of discretion to allow Walton to testify that he had ruled out self-defense. Several statutes set out the parameters as to what force is allowed under particular circumstances. Section 776.032(1), Florida Statutes (2006), states:
776.032 Immunity from criminal prosecution and civil action for justifiable use of force. 
(1) A person who uses force as permitted in s. 776.012, s. 776.013, or s. 776.031 is justified in using such force and is immune from criminal prosecution and civil action for the use of such force, unless the person against whom *162 such force was used is a law enforcement officer, as defined in s. 943.10(14), who was acting in the performance of his or her official duties and the officer identified himself or herself in accordance with any applicable law or the person using force knew or reasonably should have known that the person was a law enforcement officer. As used in this subsection, the term "criminal prosecution" includes arresting, detaining in custody, and charging or prosecuting the defendant.
Section 776.012, Florida Statutes (2006), states:
776.012 Use of force in defense of person.  A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or against the other's imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if:
(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony; or
(2) Under those circumstances permitted pursuant to s. 776.013.
In pertinent part, section 776.013, Florida Statutes (2006), states:
776.013 Home protection; use of deadly force; presumption of fear of death or great bodily harm. 
(1) A person is presumed to have held a reasonable fear of imminent peril of death or great bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or great bodily harm to another if:
* * *
(b) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.
(2) The presumption set forth in subsection (1) does not apply if:
(a) The person against whom the defensive force is used has the right to be in or is a lawful resident of the dwelling, residence, or vehicle, such as an owner, lessee, or titleholder, and there is not an injunction for protection from domestic violence or a written pretrial supervision order of no contact against that person; or
* * *
(c) The person who uses defensive force is engaged in an unlawful activity or is using the dwelling, residence, or occupied vehicle to further an unlawful activity;
* * *
(3) A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.
"`Residence' means a dwelling in which a person resides either temporarily or permanently or is visiting as an invited guest." § 776.013(5)(b), Fla. Stat. The evidence indicated that Appellant and Ernest Lamar both occupied the residence where he was killed.
Before the enactment of sections 776.032 and 776.013, Florida Statutes, in 2005, "a person was justified in using deadly force when the person was attacked in his or her *163 home and `reasonably believed deadly force was necessary to prevent "imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony."'" State v. Heckman, 2007 WL 4270594, *2, ___ So.2d ___, ___ (Fla. 2d DCA Dec.7, 2007) (quoting Note, Florida Legislation-The Controversy Over Florida's New "Stand Your Ground" Law-Fla. Stat. § 776.013 (2005), 33 Fla. St. U.L. Rev. 351, 354 (Fall 2005)). "The creation of section 776.013 eliminated the burden of proving that the defender had a reasonable belief that deadly force was necessary by providing a conclusive presumption of such." Heckman, 2007 WL 4270594 at *2, ___ So.2d at ___.
"All relevant evidence is admissible, except as provided by law." § 90.402, Fla. Stat. (2006). Generally, any relevant evidence is admissible unless admission is precluded by a specific rule of law. See Council v. State, 691 So.2d 1192, 1194 (Fla. 4th DCA 1997). "A trial judge has broad discretion in determining the relevance of evidence." Slocum v. State, 757 So.2d 1246, 1250 (Fla. 4th DCA 2000).
The purely factual observations of a witness are admissible, if relevant, such as in a negligence trial, where a paramedic's testimony regarding the "mechanism of injury" (where the plaintiff injured his lower back when he landed near the base of an inflated, vinyl tube-like structure at an agricultural fair) was not expert in nature. See Blue Grass Shows, Inc. v. Collins, 614 So.2d 626, 626-27 (Fla. 1st DCA 1993). Even the opinion of a lay witness may be admissible where the "witness cannot readily, and with equal accuracy and adequacy," explain his or her observations or perceptions without giving an inference or opinion. § 90.701(1), Fla. Stat. Further, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it includes the ultimate issue to be decided by the trier of fact." § 90.703, Fla. Stat. (2006).
In asserting that the trial court did not err, the State relies on Floyd v. State, 569 So.2d 1225 (Fla.1990), a murder case, in which Floyd contended that several police officers, non-expert State witnesses, gave improper lay opinion testimony. One officer speculated as to how various objects at the crime scene were knocked over or handled during the crime, and as to how the victim may have received a laceration on her nose. A sergeant also testified as to how the victim might have received the injury to her nose. Finally, a detective testified that the murder was committed by a "creep-in burglar." See id. at 1231. The Florida Supreme Court stated that "[l]ay witness opinion testimony is admissible if it is within the ken of an intelligent person with a degree of experience." Id. at 1232. Finding "the officers' testimony within the permissible range of lay observation and ordinary police experience," the court concluded that "the trial court did not abuse its discretion in admitting this particular testimony." Id.
In the testimony at issue, Appellant preserved the objections based on "opinion, speculation," relevancy, and hearsay grounds. Addressing the first ground for objection, Appellant argues on appeal that Investigator Walton's testimony that he had ruled out self-defense essentially foreclosed the jury from making a finding on this critical, ultimate issue: "It is for the lawyers to argue and the jury to decide whether Ms. Bartlett killed Lamar in self-defense. It was illegal evidence, properly characterized as lay opinion testimony because Walton was never qualified as an expert." Even though the defense did not express its objection this artfully in the trial court, we conclude that the "opinion" objection was sufficient to invoke section *164 90.701, supra. Appellant concedes that it was proper to allow Walton to testify regarding what he had seen at the crime site, including the victim's wounds. However, the jury did not need the investigator's opinion for the jury to determine whether Appellant had acted in self-defense. The error occurred in allowing Walton to opine to the jury that the nature of the stab wound led him to rule out self-defense. Appellant correctly asserts that the mere fact that section 776.032(2) required the investigator(s) to determine whether "there is probable cause that the force that was used was unlawful" does not automatically bootstrap this information into admissible evidence. On this record, the factual matter of what the investigator personally observed at the crime scene is quite distinct from his opinion regarding what had happened before his arrival, i.e., the circumstances of the stabbing death.
The scope of section 90.701 is usually limited to matters relating to distance, time, size, weight, form, and identity, which are easily observable. See Kolp, 932 So.2d at 1284. Appellant asserts that whether a violent act was committed using justifiable force is an entirely different matter. Appellant cites case law stating that "a witness's opinion as to the guilt or innocence of the accused is not admissible." Thomas v. State, 837 So.2d 443, 446 (Fla. 4th DCA 2002). Just as the objectionable testimony in Thomas (that the witness had no doubt that the defendant had driven the vehicle) was error and hurt the defense by removing the ultimate question of guilt from the jury (which, in the prosecution for second-degree murder and leaving the scene of an accident with death or serious bodily injury, had to determine whether the defendant had driven the van that ran over the victim), Investigator Walton's conclusion that self-defense was not involved, in effect, answered a question that the jury itself was supposed to resolve: did Appellant act with justifiable force in self-defense? In the instant case, the defense did not "open the door" so as to allow the State to pursue this line of questioning. Cf. id. at 447.
This Court in Somerville v. State, 626 So.2d 1070, 1071-72 (Fla. 1st DCA 1993), concluded that it was error to allow a witness who had purchased a class ring to opine as to whether he believed it was stolen; likewise, it was error to allow Investigator Walton to opine to the jury that he had ruled out self-defense. In Kolp, the Fourth District Court concluded that the State lay witness' opinion regarding the purpose of hollow-point bullets was "speculative." See 932 So.2d at 1284. The same reasoning holds true relating to an investigator's opinion on whether self-defense was involved.
In Sosa-Valdez v. State, 785 So.2d 633 (Fla. 3d DCA 2001), the co-defendants were convicted of armed robbery, carjacking, kidnapping, and burglary. Their theory of defense was that the entire incident had been staged to allow the participants to keep a lot of money for themselves by pretending the funds had been stolen from the alleged victim, Mr. Lagru. See id. Therefore, it was harmful error to allow the lead detective to opine that Mr. Lagru was not involved in a set-up. See id. at 634.
To the extent that evidence of self-defense is a matter for expert opinion, not lay testimony, we note that the medical examiner opined regarding the nature of the victim's wounds and the several scenarios under which the stab or poke wounds could have been made. If the issue of self-defense is appropriate for expert opinion only, then Investigator Walton was never qualified as an expert in assessing the causes and circumstances of the infliction of wounds. The State's argument that Walton could have been qualified *165 as an expert is speculative, given this record.
The State correctly notes that, under section 90.701(1), even the opinion testimony of a lay witness may be admissible where "[t]he witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness's use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party." The State's argument that this statute allows the challenged testimony to be heard by the jury is unconvincing, for three reasons. First, 1) the factual matter of what the investigator observed at the crime scene is distinctly different from 2) his opinion regarding what had happened, i.e., the circumstances of the stabbing. See Somerville, 626 So.2d at 1072 (concluding that a witness' relevant opinion that he believed a class ring was stolen was not demonstrably based on anything perceived by him, so that section 90.701 did not allow its admission into evidence). The witness could readily, and with equal accuracy and adequacy, communicate to the jury what he had seen without relying on opinions and inferences. Second, Walton's opinion ruling out self-defense prejudiced the defense, for reasons that will be discussed, infra. Third, if Walton's opinions and inferences relating to self-defense "require a special knowledge, skill, experience, or training," then section 90.701(2) precludes the testimony. He was not qualified as an expert. See Nardone, 798 So.2d at 873-74 (rejecting State's contention that the officer's testimony was properly admitted as expert opinion regarding how an aluminum strip from a planter was used in the commission of a crime, absent an adequate predicate demonstrating the witness' awareness of how the defendant had actually used the aluminum strip). Even relevant evidence is inadmissible where, as occurred here, "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, [or] misleading the jury." § 90.403, Fla. Stat. (2006).
To the extent that the State relies on the facts in Floyd to support the admission of Investigator Walton's lay opinion testimony, we find those facts are materially distinguishable for two reasons. First, the officers' testimony in Floyd was more closely related to what they had personally observed at the residence where the elderly victim sustained multiple stab wounds, and the content fell "within the permissible range of lay observation and ordinary police experience," i.e., that a Kleenex box appeared to have been knocked off the dresser, that a tablecloth found lying on the bed looked as if someone had wiped off an object with blood on it, that a laceration on the victim's nose appeared to result from being "smacked in the face," and that the nose wound was consistent with being struck while the eyeglasses were being worn during a fight or struggle. See 569 So.2d at 1231-32. Second, although the officers should not have been allowed under section 90.701(2) to testify to medical matters such as whether all the victim's injuries occurred at the same time and whether the wound atop the victim's hand was defensive, the Florida Supreme Court in Floyd concluded that this error was cumulative and harmless, given the medical examiner's testimony regarding the timing of the wounds and other testimony indicating that the nose wound was consistent with a fight or struggle. See 569 So.2d at 1232.
Defense counsel objected on hearsay grounds too, whereupon the State immediately concluded the direct examination of Investigator Walton. The challenged testimony is hearsay. Walton testified that, in his experience, the knife is held out to fend off someone, which would not explain Mr. Lamar's wound. This would have resulted *166 from the knife-wielder's bringing it down into the victim's chest with a great deal of force. The hearsay objection was properly made when the investigator started to testify about what two witnesses had advised in their statements.
Because it was error to allow Investigator Walton to opine to the jury that he had ruled out self-defense, the follow-up issue is whether the State has met its burden under DiGuilio, 491 So.2d at 1139, to show there is no reasonable possibility that the admission of this testimony affected the verdict. The State misperceives the "harmless error" test when it relies solely on "the ample evidence of Appellant's guilt." Even if the evidence in a case is overwhelming, the Florida Supreme Court has stated that the analysis in DiGuilio focuses on something more. See Cardenas v. State, 867 So.2d 384, 395 (Fla.2004) (noting the "harmless error" test is not merely a "sufficiency-of-the-evidence" test). Appellant correctly notes that just because defense counsel acknowledged at trial that the evidence might support a finding of guilt for manslaughter (given Appellant's internally conflicting audiotaped statements given to the police during three interviews shortly after the incident), the defense really hoped for a "not guilty" verdict.
After receiving Miranda rights before the first interview, Appellant told the police that Mr. Lamar had accidentally stabbed himself when he fell on the knife he was carrying. She denied any history of domestic violence between the victim and herself. When the police advised her of certain inconsistencies between her story and the crime-scene evidence, Appellant stated in her second interview that she believed Mr. Lamar had tripped on the carpet while carrying a plate and a beer can. Appellant insisted that Mr. Lamar had never hit her. She denied stabbing Mr. Lamar and claimed not to know how the knife had ended up in the victim's chest. In her third interview, Appellant changed her story and said that she and Mr. Lamar had argued at the time of the incident. Appellant told the police that Mr. Lamar had a pattern of getting intoxicated and taking Lortabs until he "freaked out." She stated that before the stabbing, Mr. Lamar wanted sex and attacked her by grabbing her hair; choking her; repeatedly punching, slapping, and kicking her; and hitting her all over with his fists. She had warned Mr. Lamar to leave her alone. He had thrown a chair at Appellant. Appellant told the authorities that when she could not take this treatment anymore, she reached for a nearby knife as Mr. Lamar lunged at her, resulting in his stab wound. Appellant told the police that she had lied to them initially because she was scared and did not think anyone would believe the truth. The record demonstrates that Appellant relied partly on a theory of self-defense and did not concede her guilt of a lesser-included offense. This was not a "slam-dunk" case for the State.
The State asserts that Investigator Walton's opinion testimony is merely cumulative to that of the medical examiner, such that no harm occurred in the admission of the challenged testimony. Although Dr. Siebert opined that some of the evidence is consistent with Appellant's being the aggressor who teased or prodded the victim, the medical examiner testified further that other evidence is consistent with Appellant's protecting herself from the lunging victim. Therefore, the evidence was inconclusive and disputed as to whether Appellant had acted with justifiable force in self-defense. Thus, it is misleading and incomplete for the State to conclude that Investigator Walton's objectionable testimony is merely cumulative.
We note too that the jury could have held the opinions of the lead investigator in higher regard than the testimony of any *167 other lay witness, thereby reinforcing the prejudice caused by Investigator Walton's conclusions. Also, the jury could have inferred that Walton knew certain information that had not been disclosed to the jury, leading the jury impermissibly to speculate as to matters outside the record. See Martinez v. State, 761 So.2d 1074, 1080 (Fla.2000) (noting "there is an increased danger of prejudice when the investigating officer is allowed to express his . . . opinion about the defendant's guilt," and the "error in admitting improper testimony may be exacerbated where the testimony comes from a police officer"). Analogous to Kolp, 932 So.2d at 1285, the jury's findings as to why Appellant stabbed Mr. Lamar were critical in determining whether she had committed a crime. Because the State has not met its burden under DiGuilio to show harmless error, we are constrained to REVERSE the conviction and sentence and REMAND for a new trial.
BENTON, J., concurs; ALLEN, J., concurs in the judgment.