DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CAMDEN STUKINS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-1394

[August 13, 2025]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Robert Meadows, Judge; L.T. Case No. 312020CF000081.

Daniel Eisinger, Public Defender, Mara C. Herbert and Austin C. Edwards, Assistant Public Defenders, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Zi Jin Peter Chan, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Camden Stukins ("Defendant") appeals his convictions and life sentence for second-degree murder, attempted manslaughter, and sale, manufacture, delivery, or possession with intent to sell, manufacture, or deliver cannabis while armed. During a drug deal, Defendant shot one bullet from his gun, which perforated the front passenger's ("Passenger") head and injured her, and then entered the driver's ("Driver") head and killed him. Defendant claimed that the gun had accidentally discharged after he had brandished it in self-defense.

On appeal, Defendant principally challenges the admission of the lead detective's ("Lead Detective") lay opinion testimony that the shooting was not accidental. Defendant argues the trial court erred in admitting this testimony, as Lead Detective did not personally observe the shooting. We agree with this argument and reverse for a new trial because Lead Detective's testimony usurped the jury's function, and the trial court's error in admitting the testimony was not harmless. Defendant's remaining arguments lack merit without further discussion.

## Background

*Defendant's Testimony*

At trial, although Defendant did not choose to testify until after the State had rested, we present Defendant's testimony first, as his testimony frames the argument which we address in this opinion. Our recitation of Defendant's testimony should not be interpreted as indicating that we have accepted Defendant's testimony as true. We make no finding in that regard. Defendant testified as follows.

Defendant considered Passenger a friend. Passenger told him where to meet for the drug deal and that her brother's friend would drive her to the meeting place. When the car containing Passenger pulled in, Defendant noticed it was fully occupied and he recognized Passenger's brother's friend as Driver.

Driver's presence made Defendant anxious. Defendant had seen Driver on social media in posts and videos in which Driver was holding guns. After Driver's car had backed into a parking spot next to Defendant's car, Defendant grabbed the marijuana and his gun out of his car's glovebox. Defendant did not check to see if his gun was loaded. Defendant walked up to Passenger's side of the car.

Driver's left hand was out of sight, while his right hand was on his lap with "the money"[1] and his phone. Defendant asked Passenger, "Where's the money?" and she told Defendant to talk to Driver. Defendant asked Driver, "What's up with the money?" Driver asked to see the marijuana, and Defendant asked to see the money first. This back-and-forth continued for a few minutes.

Defendant saw Driver lift his left hand a little, revealing what appeared to be the flash of metal from the back of the handle of a gun. Defendant inferred Driver was trying to pressure Defendant to hand over the drugs.

At this point, Passenger's window was three-quarters of the way up. Driver's flashing of the gun caused Defendant to hand over the marijuana. Driver looked at the marijuana and the money, but did not hand over the money. After a few seconds, Driver reached down, causing Defendant to fear his life was in danger because Driver might shoot him. In response,

---

[1] Physical and testimonial evidence indicated that Driver's "money" was actually counterfeit bills.

Defendant pulled out his gun for safety and put his arm through Passenger's window. But as soon as Defendant put his arm out, Driver's car began moving.

Defendant was standing right against Driver's car, so when the car started moving, Defendant thought his feet would get run over. Defendant tried to retreat and jump out of the car's way, but when the window hit his arm, he flinched. The gun went off either because Defendant's arm hit the window or the window hit the gun.

Defendant heard his gun fire and Driver's car take off. Defendant then hurried to his car and drove off because he had just been robbed and feared Driver would come back and pursue him.

At trial, Defendant denied having any "ill will, hatred, or spite towards" Driver or Passenger, nor any intention to shoot Driver or Passenger.

*Lead Detective's Testimony*

The State noted during Lead Detective's testimony that he was not being presented as an expert witness. Lead Detective testified as follows.

When Lead Detective first arrived at the scene of the shooting, "most of the witnesses were gone" and Defendant was not there. Lead Detective did not speak with Passenger or the backseat passengers. He viewed the surveillance footage. He assigned deputies to interview witnesses, go to the hospital to speak with Passenger, locate Defendant, and process the crime scene.

The State asked Lead Detective, "from your review of all of the evidence . . . did you have any indication from the physical evidence or otherwise that this was an accidental shooting?" Before Lead Detective could answer, defense counsel objected due to improper opinion on an ultimate issue and invading the province of the jury. **The trial court overruled the objection and Lead Detective answered, "[n]o, I did not think it was accidental."**

The State continued, "Okay. And why is that?" Defense counsel brought the same improper opinion objection. The trial court again overruled the objection. Lead Detective began to answer the question by explaining that witness testimony supported his conclusion. The defense tendered a hearsay objection, which the trial court sustained.

3

Lead Detective then testified, "In my experience from working all sorts of shootings and different cases[,] it's very uncommon for someone to just accidentally pull a trigger . . . ." The defense objected because the testimony "calls for expert opinion and again, the reason [sic] improper opinion and improper bolstering, invading the province of the jury." The trial court overruled this objection. Lead Detective continued:

> So, with the evidence that we were seeing with two people actually be [sic] struck by what we believe was one bullet it would've been, the suspect would've had to [have] been outside the vehicle at an angle to where it would've been able to pass through [Passenger's] head into [Driver's] head. So, it just would've been very difficult and at that point you would've had several seconds from inside the vehicle to coming out, if it was accidental it probably would've happened inside of the vehicle, not once you get outside to where it could have that angle cause at that point the car probably would've been moving and he would've been at an angle to get the bullet through both heads.

*Deliberations and Verdict*

After closing arguments, the jury submitted the following question to the court: "Where did the bullet enter [Passenger] and where did it exit? Trajectory." The court responded: "You must rely on your memory of the evidence and the exhibits you have and jury instruction rules for deliberation paragraph 2."

The jury found Defendant guilty of (1) sale, manufacture, delivery of, or possession with the intent to sell, manufacture, or deliver cannabis with a firearm; (2) the lesser-included offense of attempted manslaughter by act against Passenger; and (3) second-degree murder with a firearm against Driver. The trial court adjudicated Defendant accordingly. This appeal follows.

**Analysis**

"A trial court's admission of evidence is reviewed for an abuse of discretion, limited by the rules of evidence." *Sanders v. State*, 254 So. 3d 1038, 1040 (Fla. 4th DCA 2018). A trial court's erroneous interpretation of the rules of evidence and applicable caselaw is subject to de novo review. *Pantoja v. State*, 59 So. 3d 1092, 1095 (Fla. 2011).

4

## A.    Impermissible Lay Opinion Testimony

Lead Detective testified he did not think the shooting was accidental. The State does not address Defendant's argument that the trial court erred in admitting this lay opinion testimony, and instead directly proceeds to argue the error was harmless. "As such, we treat [the State's] failure to address this issue in [its] answer brief as a concession . . . ." *Agee v. Brown*, 73 So. 3d 882, 886 (Fla. 4th DCA 2011); *see also Anderson v. Ewing*, 768 So. 2d 1161, 1166 n.1 (Fla. 4th DCA 2000) ("[The appellee] as much as conceded this issue by failing to address it at all in his answer brief."). Nevertheless, we feel obligated to discuss why admitting Lead Detective's lay opinion testimony was error and was not harmless error.

Lead Detective served as a lay witness because the State did not lay a foundation with qualifying information about his professional background in knowledge, skill, experience, training, or education to admit him as an expert. *See* § 90.702, Fla. Stat. (2023); *Andres v. State*, 254 So. 3d 283, 298 (Fla. 2018). The State did not contest the lay witness designation.

"Generally, a lay witness may not testify in terms of an inference or opinion, because it usurps the function of the jury." *Floyd v. State*, 569 So. 2d 1225, 1231–32 (Fla. 1990). However, a lay witness is permitted to testify in the form of opinion or inference as to what the witness perceived when:

> (1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness's use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
>
> (2) The opinions and inferences do not require a special knowledge, skill, experience, or training.

§ 90.701, Fla. Stat. (2023).

Thus, "[o]pinion testimony of a lay witness is only permitted if it is based on what the witness has personally perceived." *Fino v. Nodine*, 646 So. 2d 746, 748 (Fla. 4th DCA 1994); *Bolin v. State*, 41 So. 3d 151, 155 (Fla. 2010) ("An intelligent person with some degree of experience may testify as a lay witness to what they observe."). "[T]he lay witness's testimony must be grounded in reliability and personal perception rather

5

than speculation." *Williams v. State*, 300 So. 3d 202, 209 (Fla. 4th DCA 2020) (quoting *Lewek v. State,* 702 So. 2d 527, 532 (Fla. 4th DCA 1997)).

Here, Lead Detective did not personally observe the shooting. When he first arrived at the shooting scene, "most of the witnesses were gone" and Defendant was not there. Lead Detective assigned other deputies to interview witnesses, go to the hospital, locate Defendant, and process the crime scene. He viewed video footage from the gas station, but the footage showed a gas pump obstructing the shooting as it had occurred.

Lead Detective's opinion testimony was based entirely on information conveyed to him, not from his personal perceptions. His lay opinion that the shooting was intentional was based on photographs of the gunshot wounds to Driver and Passenger, autopsy results, witness statements taken by other investigators, or crime scene evidence collected by other investigators. Thus, Lead Detective provided impermissible lay opinion testimony, as illustrated by the following three cases.

In *Nardone v. State*, 798 So. 2d 870 (Fla. 4th DCA 2001), the defendant was convicted of aggravated assault with a deadly weapon. *Id.* at 871. While a hospital patient, the defendant attempted to strike an orderly with an aluminum strip torn from a flower planter. *Id.* at 871–72. The next day, a police officer interviewed witnesses and retrieved the aluminum strip. *Id.* at 872. At trial, the officer opined, over the defense's objections, that the aluminum strip could cause great bodily harm. *Id.* We held the officer's "opinion that the object could be used as a deadly weapon was speculative" because she "was not an eyewitness to the assault and her testimony was not based upon her personal observations on how the aluminum strip was used." *Id.* at 873. We determined the error was not harmless, as it was "coupled with the state's [improper] conduct during closing argument." *Id.* at 874.

Similarly, we have held a lay witness's testimony that hollow-point bullets are for killing was "speculative," as such testimony was not "related to perception: e.g., 'distance, time, size, weight, form and identity.'" *Kolp v. State*, 932 So. 2d 1283, 1284 (Fla. 4th DCA 2006) (quoting *Fino,* 646 So. 2d at 748–49). Such an error was not harmless because "[i]t is impossible to find beyond a reasonable doubt that this testimony had no effect on the jury prejudicial to defendant." *Id.* at 1285.

In *Bartlett v. State*, 993 So. 2d 157 (Fla. 1st DCA 2008), the lead investigator of a murder case interviewed the defendant and personally observed the stab wound to the victim's body. *Id.* at 157-58. Over defense objections, the investigator testified that the stabbing was not in self-

defense based on the wound angle, blood patterns, and his own experience. *Id.* at 158–59. The First District held the trial court had abused its discretion in permitting the investigator to opine that his observations had led him to rule out self-defense because: (1) the investigator could have communicated his observations without relying on his opinion; (2) his opinion had prejudiced the defense; and (3) his opinion required special knowledge, skill, experience, or training, for which the investigator was not qualified to opine as an expert. *Id.* at 164–65. The court held the error was not harmless because other evidence consistent with the defendant's self-defense theory had been presented, and the jury may have deferred to the lead investigator's testimony more than another lay witness. *Id.* at 166–67.

Here, Lead Detective gave impermissible lay opinion testimony that did not rely on his actual observations. Rather, his opinion was speculative. *See Nardone*, 798 So. 2d at 873; *Kolp*, 932 So. 2d at 1284. His opinion ruled out Defendant's theory that the shooting had been accidental, thus prejudicing the defense. *See Bartlett*, 993 So. 2d at 165. Therefore, the trial court abused its discretion in admitting Lead Detective's testimony that the shooting was not accidental.

### B.    Harmless Error Analysis

The erroneous admission of lay opinion testimony is subject to harmless error analysis. *Alvarez*, 147 So. 3d at 543; §§ 59.041, 924.33, Fla. Stat. (2023). The harmless error test places the burden on the beneficiary of the error "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). "Application of the test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict." *Id.*

The State's arguments explaining why the error was harmless do not satisfy its burden to prove beyond a reasonable doubt that the error did not contribute to the verdict. The State gives four reasons in support of harmlessness: (1) the jury was presented with two versions of events and determined which was credible; (2) independent of Lead Detective's challenged testimony, the quantity and strength of the State's evidence of an intentional shooting was compelling; (3) Lead Detective's challenged testimony was isolated and not repeated during trial or relied upon by the

prosecutor during closing arguments; and (4) an accidental shooting was not the sole defense theory argued by defense counsel. We address each reason in turn.

### 1. Credibility

The State argues the error was harmless because the jury had the opportunity to evaluate Defendant's testimony against the State's evidence. That argument suffers from a serious logical flaw. If the verdict had turned on the jury's assessment of Defendant's credibility, then the admission of Lead Detective's impermissible opinion may have tainted that assessment. Lead Detective's testimony is especially troubling because the jury may have afforded greater weight to Lead Detective's testimony than Defendant's because of the former's status as a police officer.

"[E]rror in admitting improper testimony may be exacerbated where the testimony comes from a police officer." *Martinez v. State*, 761 So. 2d 1074, 1080 (Fla. 2000). "[W]hen a police officer, who is generally regarded by the jury as disinterested and objective and therefore highly credible, is the corroborating witness, the danger of improperly influencing the jury becomes particularly grave." *Id.* (quoting *Rodriguez v. State*, 609 So. 2d 493, 500 (Fla. 1992)).

"There is the danger that jurors will defer to what they perceive to be an officer's special training and access to background information not presented during trial." *Charles v. State*, 79 So. 3d 233, 235 (Fla. 4th DCA 2012); *Williams*, 300 So. 3d at 211. "We note too that the jury could have held the opinions of the lead investigator in higher regard than the testimony of any other lay witness, thereby reinforcing the prejudice caused by [the lead investigator's] conclusions." *Bartlett*, 993 So. 2d at 166–67.

Therefore, the State's argument—that the jury could have determined Defendant's guilt based on evaluating its evidence against Defendant's credibility—demonstrates the error could have contributed to the verdict.

### 2. Quantity and Strength of the State's Evidence

The State argues the error was harmless because it had presented compelling evidence of an intentional shooting independent of Lead Detective's testimony.

The State presented evidence from the three backseat passengers. They all testified that they were unarmed and did not think the other passengers

were armed. The police investigation concluded the vehicle did not contain any weapons, and the passengers did not have weapons, when the shooting had occurred. This evidence is not conclusive or compelling. Whether weapons were in the vehicle, or whether the passengers had weapons, does not refute Defendant's argument that his gun had misfired.

The middle backseat passenger testified that Defendant had reached into the vehicle and shot the victims without provocation. The middle backseat passenger further testified: she could not remember whether the window had been partially or fully open; she did not hear a conversation between Defendant and Driver; and Defendant had pulled out his gun *after* Driver's car started to take off. The other backseat passengers admitted they had not been paying attention to the situation and did not see the shooting at all. Consistent with the middle backseat passenger's testimony, the right backseat passenger testified he had heard the gunshot *after* Driver's car had started to drive away. Inconsistent with the middle backseat passenger's testimony, the right backseat passenger testified he had heard Defendant ask Driver "Where's the money?" All three backseat passengers had limited knowledge of the shooting, and their testimonies are partially inconsistent, reflecting a lack of knowledge and perception.

Additional State evidence demonstrates that the State did not present compelling evidence of Defendant's intent to kill. The crime scene detective, who had extensive forensic ballistics experience, could not determine whether the shooting was accidental or intentional. Moreover, the medical examiner who had conducted Driver's autopsy testified to her opinion that Driver had died of a homicide, but did not conclude whether that homicide was intentional or accidental.

Furthermore, the quantity and strength of the State's evidence does not show that the error did not contribute to the verdict because the jury's question reflects its confusion as to the bullet's trajectory. The State presented no evidence on the bullet's trajectory. The jury asked: "Where did the bullet enter [Passenger] and where did it exit? Trajectory."

Because the jury was confused about the bullet's trajectory and likely wanted to determine for itself whether the shooting was intentional, the court's instruction to rely on its memory of the evidence could have compelled the jury to rely on Lead Detective's testimony that the shooting was intentional.

Therefore, the State's evidence was not sufficient to overcome its burden to show the error did not contribute to the verdict.

9

### 3. *Isolated Error*

The State argues the error was harmless because Lead Detective's challenged testimony was isolated, not repeated during trial, and not relied on in the State's closing arguments. The State highlights that the trial court read the standard instruction that "[t]he fact that a witness is employed in law enforcement, . . . does not mean that his or her testimony deserves more or less consideration than that of any other witness." This, too, does not satisfy the State's burden of demonstrating harmlessness.

The State cites to *Pujol v. State*, 290 So. 3d 520, 523–24 (Fla. 3d DCA 2019), and *Ayalavillamizar v. State*, 134 So. 3d 492, 497 (Fla. 4th DCA 2014), for the proposition that an isolated error, not repeated during trial or during closing arguments, and constrained by the same standard jury instruction, supports harmless error. However, the error here was of such magnitude that its isolation could not render the verdict harmless.

Defendant was charged with second-degree murder and attempted second-degree murder, so proving Defendant's intent was crucial to securing the convictions. As defense counsel's closing argued, "The sole issue is why [Defendant] pulled the trigger."

A second-degree murder is defined as "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." § 782.04(2), Fla. Stat. (2020). An act evinces a "depraved mind" if it "is done from ill will, hatred, spite or an evil intent." *Salomon v. State*, 267 So. 3d 25, 33 (Fla. 4th DCA 2019) (quoting *Wiley v. State*, 60 So. 3d 588, 591 (Fla. 4th DCA 2011)). "However, 'extremely reckless behavior itself is insufficient from which to infer any malice. Moreover . . . an impulsive overaction to an attack or injury is itself insufficient to prove ill will, hatred, spite, or evil intent.'" *Id.* (omission in original) (quoting *Wiley*, 60 So. 3d at 591).

Lead Detective's opinion as to Defendant's intent (the depraved mind element) essentially told the jury his opinion that Defendant was guilty of both the completed and attempted second-degree murders and that Defendant's story was not credible. "It is well established that a witness's opinion as to the guilt or innocence of the accused is not admissible . . . [as it] impermissibly invades the province of the jury." *Thomas v. State*, 837 So. 2d 443, 446 (Fla. 4th DCA 2002); *accord Knowles v. State*, 632 So. 2d 62, 65–66 (Fla. 1993) ("[A]llowing one witness to offer a personal view on the credibility of a fellow witness is an invasion of the province of the

10

jury to determine a witness's credibility."); *Fino*, 646 So. 2d at 749 ("If the witness' conclusion tells the trier of fact how to decide the case, and does not assist it in determining what has occurred, then it is inadmissible." (quoting *Town of Palm Beach v. Palm Beach County*, 460 So. 2d 879, 882 (Fla. 1984))).

And error may still be harmful even if it was not explicitly referenced in closing arguments. *See Edwards v. State*, 248 So. 3d 166, 171 (Fla. 4th DCA 2018) ("The detective's opinion on body language severely damaged appellant's credibility, even if the prosecutor did not rely upon this testimony in closing argument.").

Therefore, the fact that the opinion was isolated does not necessarily establish its harmlessness.

*4. Dual Defense Theory*

Lastly, the State argues Lead Detective's testimony did not taint the verdict because the defense advanced two theories of the case. The State contends the defense argued both that Defendant had discharged the gun in self-defense and that the discharge had been accidental. As an initial matter, the State's characterization of the defense's theory of the case is incorrect. The defense argued: "If you find that when [Defendant] pulled out his gun he didn't do so because he wanted to fire on somebody, but he wanted to lawfully defend himself and that the gun only went off because the car started driving off[,] that's excusable under the law . . . ." Defendant presented one theory of the case: The gun had accidentally discharged after Defendant had brandished it in self-defense.

Even if we assume the State correctly characterized the defense's theory of the case as having advanced two defenses, Lead Detective's testimony was still harmful. When a "detective acted effectively as a fact-finder by neutralizing [the] appellant's defense in front of the jury," that "invaded the exclusive province of the jury and was harmful error." *Hunt v. State*, 284 So. 3d 1092, 1096 (Fla. 4th DCA 2019). The State argues Defendant cannot rely on *Hunt* because he advanced two defenses, not one defense like in *Hunt*. Although Lead Detective "neutralized" only one defense here (assuming Defendant advanced two defenses), Defendant was still entitled to have the jury fairly consider each of his alternative theories. That Lead Detective did not discredit Defendant's other alleged defense does not overcome the State's burden to show no reasonable possibility exists that the error contributed to the conviction.

Per the above-noted analysis, we conclude the State failed to meet its substantial burden of proving "beyond a reasonable doubt" that Lead Detective's improper testimony "did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error [in overruling objections to that testimony] contributed to the conviction." *DiGuilio*, 491 So. 2d at 1135.

## Conclusion

We reverse the judgment and sentence and remand for a new trial because the trial court erred in admitting Lead Detective's impermissible lay opinion testimony that the shooting was not accidental. Lead Detective did not personally observe the shooting, was not admitted as an expert witness, and did not have specialized knowledge and training. The error was harmful because the State failed to prove that the error did not contribute to the verdict. As stated above, the defendant's remaining arguments lack merit without further discussion.

*Reversed and remanded.*

WARNER and GERBER, JJ., concur.

*　　*　　*

***Not final until disposition of timely filed motion for rehearing.***