648 So.2d 660 (1994)
Ronald HEATH, Appellant,
v.
STATE of Florida, Appellee.
No. 77234.
Supreme Court of Florida.
October 20, 1994.
Rehearing Denied January 25, 1995.
*661 Nancy A. Daniels, Public Defender, and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Anita J. Gay, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Ronald Heath, a prisoner under sentence of death, appeals his conviction for first-degree murder and the attendant death sentence. He also appeals a life sentence as an habitual offender for armed robbery. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution, and affirm both the conviction and the sentences.
Heath was charged with the first-degree murder and armed robbery of Michael Sheridan in Gainesville, Florida, in May 1989. Heath was also charged with conspiracy to *662 commit forgery, conspiracy to commit uttering a forgery, and seven counts of forgery and uttering a forgery based upon purchases made the following day with Sheridan's credit cards at a Gainesville shopping mall.
The evidence at trial revealed that Heath and his live-in girlfriend, Penny Powell, traveled to the Jacksonville home of Heath's grandmother. After an argument with Heath, Powell returned to Douglas, Georgia, where she and Heath lived. Heath and his younger brother, Kenneth, drove to Gainesville to visit some of Heath's friends. On May 24, 1989, the brothers went to the Purple Porpoise Lounge in Gainesville where two of Heath's friends worked as waitresses. Sometime during the evening the brothers struck up a conversation with Sheridan, a traveling salesman who had come to the lounge for drinks and dinner. Sheridan bought the brothers a drink and inquired if they ever got high or had any marijuana. Heath suggested to Kenneth that they take Sheridan somewhere and rob him; Kenneth agreed. The trio left the bar in Kenneth's vehicle, which Heath drove to an isolated area of Alachua County. After parking on a dirt road, all three got out of the car and smoked marijuana. Heath made the hand motion of a pistol and asked Kenneth, "Did you get it?" Kenneth retrieved a small-caliber handgun from under the car seat, pointed it at Sheridan, and told him that he was being robbed. Sheridan balked at giving the brothers anything. Heath told Kenneth to shoot Sheridan. When Sheridan lunged at Kenneth, Kenneth shot him in the chest. Sheridan sat down, saying "it hurt." As Sheridan began to remove his possessions, Heath kicked him and stabbed him in the neck with a hunting knife. Heath attempted to slit Sheridan's throat, but was unable to complete the task with the dull knife and could only saw at Sheridan's neck. Heath then instructed Kenneth to kill Sheridan with the gun, and Kenneth shot him twice in the head. The brothers moved the body further into the woods. After returning to the Purple Porpoise, the brothers took Sheridan's rental car to a remote area, removed some items, and burned the car.
The next day the brothers used Sheridan's credit cards to purchase clothes, shoes, and other items at a Gainesville mall. Although Kenneth signed all of the credit card slips, clerks from the various stores testified about the purchases made by the brothers and identified Heath in a photo lineup. The brothers discontinued use of the credit cards when a clerk in an audio store requested biographical information about Sheridan which Kenneth could not answer. The brothers returned to Jacksonville and tossed the handgun into the St. John's River. The handgun was never recovered. Heath eventually returned to the trailer which he shared with Powell in Georgia.
A medical examiner was dispatched to the scene of the murder on May 30, 1989, to examine the body, which was in a moderately advanced state of decomposition. The examiner estimated that death had occurred three to ten days earlier and that death was caused by multiple gunshot wounds and a sharp force injury to the neck.
Several weeks after the murder, Heath was arrested at his trailer for using the stolen credit cards. Powell granted the officers permission to search the trailer and her car. The officers discovered some of the clothes purchased in Gainesville and Sheridan's watch.
Both brothers were indicted for the first-degree murder and armed robbery of Sheridan. That case was later consolidated with another case where the brothers were charged with offenses connected with the forgeries of the credit cards. Kenneth entered into a plea agreement wherein he pled guilty to the charges and agreed to testify about Sheridan's murder. Kenneth was sentenced to life imprisonment without eligibility for parole for twenty-five years for the murder conviction.
Heath's trial commenced on November 5, 1990. The primary evidence linking Heath to the crime was the testimony of Kenneth, Heath's possession of a watch which could be traced to Sheridan through its serial number, and Heath's possession of certain merchandise acquired in Gainesville with Sheridan's stolen credit cards. The jury found Heath guilty of the first-degree murder and armed *663 robbery of Sheridan, as well as conspiracy to commit uttering a forgery, conspiracy to commit forgery, seven counts of forgery, and seven counts of uttering a forgery. In the penalty phase, the jury recommended the death penalty by a vote of ten to two. In its sentencing order, the trial court found two aggravating circumstances: Heath was previously convicted of second-degree murder;[1] and the murder was committed during the course of an armed robbery.[2] The trial court found three mitigating circumstances: that Heath was under the influence of extreme mental or emotional disturbance, based upon his consumption of alcohol and marijuana;[3] that Heath demonstrated good character in prison; and that codefendant Kenneth Heath received a life sentence. The court found that the aggravating circumstances outweighed the mitigating factors and sentenced Heath to death for the first-degree murder conviction. Heath was also sentenced as an habitual offender to life imprisonment for the armed robbery conviction. On the conspiracy to commit forgery and conspiracy to commit uttering a forgery convictions, Heath was sentenced to six months, with credit for time served. On each of the seven convictions for forgery and uttering a forgery, Heath was sentenced to consecutive sentences of ten years as an habitual offender.
Heath raises five issues relating to his convictions[4] and two issues relating to the death sentence.[5] He also raises two issues concerning sentencing as an habitual offender for the armed robbery conviction.[6]
As his first issue, Heath argues that the trial court erred in overruling an objection to a comment by the prosecutor in his opening statement. In relating to the jurors what he expected the evidence would show and what witnesses would be called, the prosecutor stated to the jurors:
You're going to hear testimony, ladies and gentlemen, from the only person who can tell you about what Kenny and Ronnie did. Michael Sheridan's dead; he can't tell you what happened. Kenny Heath is going to come before you and tell you how Michael Sheridan died.
Defense counsel objected to the statement, arguing that it constituted a comment on the defendant's right to remain silent. The court overruled the objection and denied defense counsel's motion for a mistrial; counsel declined the court's offer to give the jury a curative instruction.
The standard for assessing such comments is whether the comment is "fairly suspectible" of being interpreted by the jury as a comment on the defendant's failure to testify. State v. Kinchen, 490 So.2d 21, 22 (Fla. 1985). We have determined that similar prosecutorial comments impermissibly highlighted the defendant's decision not to testify. See Dailey v. State, 594 So.2d 254, 258 (Fla. 1991); State v. Marshall, 476 So.2d 150, 151 (Fla. 1985). However, such impermissible comments are subject to harmless error analysis. Marshall, 476 So.2d at 153. We find this comment harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986).
Heath also argues that the trial court erred in allowing testimony regarding the victim's good character. The State proffered the testimony of Sheridan's wife outside the presence of the jury. After ruling several portions of the testimony inadmissible, the trial court permitted testimony that the victim *664 used southern slang even though he was originally from the north, that he had season tickets for Gator football, and that he owned a pair of Gator flip-flop shoes. The wife also testified that Sheridan was a "people person" and that when he traveled he liked to go to bars in order to talk with the other patrons and watch sports events, rather that sit in his hotel room by himself.
We find no error in admitting this testimony as it corroborated Kenneth Heath's testimony concerning the events on the night in question. Kenneth stated that the victim struck up a conversation with him in the bar and that the victim's dying statements were, "Y'all aren't serious, y'all are kidding." The wife's testimony also established that a pair of Gator flip-flops found near the victim's body belonged to Sheridan. We also note that the victim was not unfairly portrayed as a "good person" to the jury. The State presented both positive and negative aspects of the victim's character in order to explain his actions on the night of the murder. The jury heard evidence that Sheridan had left his wedding ring in his car and was not wearing it at the bar and that he smoked marijuana. Thus, we find no merit to this issue.
As his third issue, Heath asserts that the court erred in admitting the testimony of cellmate Wayburn Williams regarding Heath's plans to escape from pretrial detention. On direct examination by the State, Williams testified:
He wanted to escape; he wanted to get two girls. There was only two people  his exact words: "There's only two people in this world can tie me to the murder; that's Cindy and Jennifer." He wanted to get out and "... blow their fucking brains out."
During cross-examination, the defense elicited that the State would assist Williams' placement in a suitable corrections facility in exchange for his testimony against Heath. Williams responded that he wasn't looking for easy time, but just "wanted to stay away from Ronnie Heath." During redirect examination, Williams further explained that his desire to be placed in a facility outside Alachua County was also motivated by his encounter with a guard who had offered to help him and Heath escape in exchange for $150,000. Heath had no objection to Williams' testimony regarding the desire to kill the two witnesses, but he objected to the jury hearing about any plans to escape.
We find no error in admitting Williams' testimony. None of his testimony can be fairly characterized as improper evidence of escape, but instead relates primarily to Heath's desire to eliminate two witnesses. Evidence that a suspected person in any manner endeavors to evade a threatened prosecution by any ex post facto indication of a desire to evade prosecution is admissible against the accused where the relevance of such evidence is based on consciousness of guilt inferred from such actions. Sireci v. State, 399 So.2d 964, 968 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). Moreover, a defendant's attempt to intimidate a state witness is relevant and admissible. Id. The reference to escape is incidental to this relevant testimony regarding Heath's desire to kill two witnesses that he perceived to be detrimental to him. The testimony regarding the guard's offer to assist in an escape was incidental to Williams' explanation of his plea agreement with the State in response to the defense's attempt to impeach his credibility.
Next Heath claims that the trial court erred in ruling that the testimony of Heath's employer regarding his employment was irrelevant. Heath sought to introduce evidence that he was gainfully employed both before and after Sheridan's murder in order to establish that he had no motive to commit robbery, which would in turn support Heath's defense that he did not participate in the robbery. The court sustained the State's objection to this evidence, ruling that Heath's employment after or preceding Sheridan's murder was not relevant to prove lack of motive.
The trial court has broad discretion in determining the relevance of evidence and such determination will not be disturbed absent an abuse of discretion. Hardwick v. State, 521 So.2d 1071, 1073 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 *665 L.Ed.2d 154 (1988). We do not find that the trial court abused its discretion in excluding this testimony regarding Heath's employment. Moreover, the information sought to be elicited from Heath's employer was introduced during the testimony of Heath's girlfriend Powell and was highlighted by defense counsel during closing argument. Thus, even if the court erred in excluding the employer's testimony, the error was harmless beyond a reasonable doubt. DiGuilio.
As his final guilt phase issue, Heath claims that the trial court erred in excluding Powell's testimony regarding a statement Heath allegedly made as he unpacked his luggage upon returning from Florida. Powell did testify that a watch, later identified as Sheridan's, fell out of one of Heath's tennis shoes as he unpacked and that Heath reacted with "shock and surprise." The evidence that Heath now raises as error involves Heath's statement to Powell that he "didn't know the watch was there."
The State argues that this issue has not been properly preserved, and thus is procedurally barred. The record reflects that the State filed a motion in limine seeking to prohibit testimony regarding various statements made by Heath on the basis that the statements were hearsay, including Heath's statement to Powell about the watch in his luggage and his taped statements to the police admitting that he left the bar with Sheridan, but denying any knowledge about Sheridan's murder. The record discussion regarding this motion focuses almost entirely on Heath's inculpatory statements to the police, rather than on the statement to Powell which is at issue here. However, after a lengthy discussion about the statements to the police, the court appears to have ruled on the motion by stating that "unless you can show that it is an exception to the hearsay rule, it certainly looks like it's hearsay right now." During direct examination of Powell, when it appeared that defense counsel was attempting to elicit Heath's statement concerning the watch, the State objected and asked for a side bar. During that discussion, the State gave the court an account of Heath's statement to Powell about the watch: "She's going to say he said, `I didn't know the watch was there.' She's going to say he looked surprised." The court agreed with the State that the statement was "hearsay, self-serving." Defense counsel responded that he "didn't intend to elicit hearsay; I'm very cognizant of the Court's ruling," apparently referring to the court's determination at the earlier hearing. Thus, while the record may be a little confusing, we do not agree with the State's assertion that the issue was not preserved for appellate review. The court was adequately informed as to the nature of the statement and made a ruling that it was inadmissible hearsay.
Turning to the merits of this issue, we conclude that the court did not err in excluding this statement. Heath argues that this hearsay statement was admissible under the state-of-mind exception to the hearsay rule. See § 90.803(3)(a), Fla. Stat. (1989). However, Heath's state of mind at the time that the watch fell out of his luggage approximately one week after Sheridan's murder was not "an issue in the action." Id. However, even if we were to find that the trial court erred in excluding this statement, we would find the error to be harmless beyond a reasonable doubt. DiGuilio. Heath's reaction to the discovery of the watch was clearly established by Powell's testimony even without Heath's statement.
Issues six and seven relate to the penalty phase of the proceedings below. Heath claims that the trial court erred in sentencing Heath to death because he was no more culpable than his brother Kenneth who received a life sentence. As explained at great length in the sentencing order, the trial court considered four factors in evaluating Kenneth's life sentence as a mitigating circumstance: the degree of participation of each brother, whether one brother exerted a dominating influence, who received the greatest benefit from the murder and robbery, and whether the differences between the two were great enough to warrant the difference in sentences. The trial court determined that Kenneth operated under the domination of Ronald and that this domination was the primary causal factor which resulted in Sheridan's murder. Notwithstanding these findings, the court still considered Kenneth's life *666 sentence to be a nonstatutory mitigating circumstance and gave it "substantial weight." However, the court did not deem the mitigating circumstances sufficient to overcome the aggravating factors of prior violent felony conviction and committed in the course of an armed robbery.
This Court has approved the imposition of the death sentence "when the circumstances indicate that the defendant was the dominating force behind the homicide, even though the defendant's accomplice received a life sentence for participation in the same crime." Marek v. State, 492 So.2d 1055, 1058 (Fla. 1986); see also Hayes v. State, 581 So.2d 121, 127 (Fla.), cert. denied, 502 U.S. 972, 112 S.Ct. 450, 116 L.Ed.2d 468 (1991). The record in this case supports the trial court's conclusion that Heath was the more culpable of the two defendants. Thus, the disparate treatment is justified.
Heath asserts that the court erred in giving to the jury an unconstitutionally vague instruction regarding the heinous, atrocious, or cruel (HAC) aggravating circumstance. Although Heath filed a motion to declare the death penalty statute unconstitutional, he never objected to the form of the HAC instruction given by the court. Claims that the instruction on the HAC aggravator is unconstitutionally vague are procedurally barred unless a specific objection on that ground is made at trial and pursued on appeal. James v. State, 615 So.2d 668, 669 (Fla. 1993). Thus, the issue is procedurally barred.
Issues eight and nine relate to the imposition of a life sentence under the habitual offender statute for the armed robbery conviction. Heath claims that the court erred in sentencing him as an habitual offender for the crime of armed robbery because section 775.084, Florida Statutes (1989), makes no provision for enhancing penalties for first-degree felonies punishable by life. We addressed this very issue in Burdick v. State, 594 So.2d 267 (Fla. 1992), where we held that first-degree felonies punishable by a term of years not exceeding life are subject to enhancement under the habitual felony offender statute. Thus, this claim is without merit. Likewise, we find no merit to Heath's claim that the habitual felony offender statute violates the constitutional guarantees of due process of law and equal protection. See Reeves v. State, 612 So.2d 560 (Fla. 1992) (holding that habitual felon sentencing under statute does not violate constitutional principles of equal protection, due process, double jeopardy, or ex post facto).
Accordingly, we affirm both Heath's conviction for first-degree murder and his sentence of death. We also affirm the life sentence imposed under the habitual felon statute for Heath's armed robbery conviction.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] See § 921.141(5)(b), Fla. Stat. (1989).
[2] See § 921.141(5)(d), Fla. Stat. (1989).
[3] See § 921.141(6)(b), Fla. Stat. (1989).
[4] Heath alleges the following as guilt-phase errors: 1) overruling his objection to the State's opening statement; 2) admitting victim character evidence; 3) admitting testimony regarding his desire to escape from jail; 4) excluding evidence of his employment; and 5) excluding Powell's testimony regarding a statement made by Heath.
[5] Heath alleges the following penalty-phase errors: 1) the trial court engaged in proportionality review under the guise of considering the brother's life sentence as a mitigating factor; and 2) instruction on especially heinous, atrocious, or cruel aggravating factor was unconstitutionally vague.
[6] Heath contends that the trial court erred in sentencing him as an habitual offender for the armed robbery conviction and that Florida's habitual offender statute, section 775.084, Florida Statutes (1989), is unconstitutional.