772 So.2d 600 (2000)
William MATTHEWS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-3457.
District Court of Appeal of Florida, Fifth District.
December 1, 2000.
*601 James B. Gibson, Public Defender, and Brynn Newton, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Belle B. Schumann, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
William Matthews appeals the judgment and sentence imposed after the jury found him guilty of the manslaughter death of his wife, Debra. He argues, and we agree, that several of the trial court's rulings on evidentiary matters constituted reversible error. Accordingly, we reverse on the issues discussed seriatim.[1]
Debra and her husband, Matthews, maintained an unusual marital relationship for a number of years. To add to Debra's troubles, she was a chronic drug addict. Many years of drug abuse ravaged her body and sapped her will to live (she attempted suicide several times).
The State's position was that Matthews strangled his wife to death. Matthews believed that he had killed his wife and made statements to that effect to the police when they arrested him and to the psychiatrist who examined him. However, his statements consistently reflected his bewilderment that Debra could have died so quickly. The theory of defense was that Debra, who just the week before had been hospitalized for a drug overdose and was in poor physical condition, died as a result of the lethal effects of her extended drug abuse and drug overdose.
Matthews gave an account of Debra's last days of life. He revealed that Debra finally resolved to free herself from the shackles of her addiction by entering into a drug rehabilitation program. But before she embarked upon this arduous journey, Debra wanted to have one last fling. *602 Therefore, he and Debra hitchhiked to Bunnell, rented a room at the Bunnell Motor Lodge, obtained prescription drugs from a physician, and engaged in sexual acts. But rather than being the finale to a life of drug abuse that would start her on the road to recovery, Debra's escapade led to her death and her husband's arrest for her murder.
Matthews then recounted the final moments of Debra's life and how she died. In the midst of a romantic interlude, Debra developed a sudden craving for more drugs. She became very loud and demanding. Matthews, in an attempt to subdue Debra, put his hand over her mouth for approximately ten seconds. When he removed it, she was dead. He denied squeezing her neck. It was not until almost a year later, when he learned that the medical examiner said it would take one to two minutes to strangle a person, that he concluded that he could not have killed Debra.
Dr. Greer, a court-appointed psychiatrist, wrote a report containing a synopsis of what Matthews had told him. The psychologist wrote in pertinent part:
Mrs. Matthews made an attempt to get up and obtain her narcotic bottle. The defendant pulled her back to the bed by grabbing her arm and breast. He reports holding her on the bed. He stated he placed his hand over her mouth and told her to "shut up". He was concerned as he "was on probation for a domestic violence charge and did not want to go to jail." He remembers placing his hands on her mouth, as she usually did not allow him to touch her face. He reported taking his hand off her mouth and putting it back to her mouth as she became loud.
(Emphasis added).
The prosecutor wanted to read the report to the jury. Defense counsel agreed that the report could be read, but objected to including the statement that Matthews was on probation for a domestic violence charge on the grounds that the reference to the domestic violence probation was "inadmissible, highly prejudicial; evidence of other crimes not charged on a collateral matter...." The prosecutor answered that the statement was pertinent because it was an explanation for Matthews' actions and was "relevant to Defendant's state of mind and why he is acting the way he is acting." The court ruled that the statement was admissible.
On appeal, Matthews argues that under section 90.403, Florida Statutes,[2] only his statement that he was afraid of going to jail was admissible; the statement that he was on probation for a domestic violence charge was too prejudicial to be admitted. We agree. As we explained in Farrell v. State, 682 So.2d 204 (Fla. 5th DCA 1996):
Before admitting this type of evidence, a trial court must weigh its probative value against the danger the evidence may confuse or mislead the jury. § 90.403, Fla. Stat. More important, the testimony must not inflame the jury so as to taint its verdict. Pardo v. State, 596 So.2d 665 (Fla.1992); State v. Kopko, 596 So.2d 669 (Fla.1992). Here, although the evidence may have been relevant to prove Farrell's state of mind, this probative value was outweighed by its inflammatory nature and unfair prejudice.
Id. at 206; see also Herbert v. State, 526 So.2d 709 (Fla. 4th DCA) (reversing a conviction for aggravated child abuse because the trial court had erroneously admitted evidence of a prior abusive incident involving the parent and child; the prior incident was irrelevant because the mother admitted all the facts of the charged offense and the sole question was whether her actions in this case constituted the *603 offense charged), review denied, 531 So.2d 1355 (Fla.1988).
Here, the only fact at issue was whether the actions of Matthews caused Debra's death or whether Debra died from respiratory failure as a result of her drug abuse. Because Matthews admitted his actions, there was no issue regarding Matthews' state of mind. Accordingly, there was no probative value to the evidence of a prior domestic violence offense and its admission, given its enormously prejudicial effect, was error. We cannot deem the error harmless because of the possibility that the jury was swayed by the domestic violence offense in reaching its verdict. Therefore, we must conclude that the trial court committed reversible error when it admitted the portion of the statement revealing that Matthews was on probation for a domestic violence charge.
Next we address the trial court's admission into evidence of a document assertedly for the purpose of impeaching a witness who had already concluded her testimony and thus had no opportunity to examine or explain the document. Dr. Buchan, a defense witness, testified that Debra died of the effects of her drug abuse. The prosecutor cross-examined Dr. Buchan on what the prosecutor believed was an inconsistency between Dr. Buchan's deposition statement and her trial testimony. After Dr. Buchan left the stand, the prosecutor sought to introduce Dr. Buchan's invoice to show that Dr. Buchan's explanation for her change in testimony was invalid. The trial court, over defense counsel's objection, allowed the prosecutor to put Dr. Buchan's invoice into evidence as rebuttal to her trial testimony even though Dr. Buchan was no longer present. With that ruling, the evidentiary portion of the trial concluded and the prosecutor began his closing argument. He argued the importance of the invoice and the credibility of Dr. Buchan at length.
The admission of the invoice in this manner was error. Section 90.614(1), "Prior statements of witnesses," provides:
(1) When a witness is examined concerning the witness's prior written statement or concerning an oral statement that has been reduced to writing, the court, on motion of the adverse party, shall order the statement to be shown to the witness or its contents disclosed to him or her.
(2) Extrinsic evidence of a prior inconsistent statement by a witness is inadmissible unless the witness is first afforded an opportunity to explain or deny the prior statement and the opposing party is afforded an opportunity to interrogate the witness on it, or the interests of justice otherwise require. If a witness denies making or does not distinctly admit making the prior inconsistent statement, extrinsic evidence of such statement is admissible. This subsection is not applicable to admissions of a party-opponent as defined in s. 90.803(18).
Clearly, once defense counsel objected to the fact that Dr. Buchan was not questioned about the invoice or given an opportunity to explain or deny it, the trial court was required to order that Dr. Buchan be confronted with the invoice, even though this meant recalling her to the stand. The concept of fundamental fairness would have required that Dr. Buchan be given an opportunity to explain or deny the invoice even if the statute had not. The failure to properly conduct this portion of the trial was not harmless error. Once he obtained this ruling and moved the invoice into evidence, the prosecutor began his closing argument attacking Dr. Buchan's credibility. Dr. Buchan was crucial to Matthews' case because of her conclusion that Debra died as a result of her drug abuse and not Matthews' acts. Accordingly, we reverse on this point.
It is well-established that a defendant is not entitled to a perfect trial, only a fair one. See Lackos v. State, 339 So.2d 217, 219 (Fla.1976). While the errors we have discussed are each sufficient *604 in and of themselves to require reversal, we conclude that even if each had not required reversal, the errors compounded to deny Matthews a fair trial. Because we are unable to conclude beyond a reasonable doubt that the errors addressed did not affect the verdict, State v. DiGuilio, 491 So.2d 1129 (Fla.1986), we reverse and remand for a new trial.
REVERSED and REMANDED.
THOMPSON, C.J., and COBB, J., concur.
NOTES
[1] We find no reversible error in the remaining issues raised by Defendant and thus do not address them in this opinion.
[2] Section 90.403 of the Florida Evidence Code provides that relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of prejudice, confusion or waste of time.