20 So.3d 966 (2009)
Charles PARKER, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D08-1091.
District Court of Appeal of Florida, Third District.
October 14, 2009.
Rehearing Denied November 15, 2009.
*967 Carlos J. Martinez, Public Defender, and Gwendolyn Powell Braswell, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Ansley B. Peacock, Assistant Attorney General, for appellee.
Before RAMIREZ, C.J., and SHEPHERD, and SUAREZ, JJ.
RAMIREZ, C.J.
Charles Parker appeals his final judgment of conviction and sentence. We reverse Parker's final judgment of conviction and sentence, and remand the case for a new trial because the trial court erroneously permitted the introduction of collateral crimes evidence which highly prejudiced Parker.

1. Factual Background

The State of Florida charged Parker with one count of possession with intent to sell marijuana, and one count of trafficking in cocaine. A jury found Parker guilty as charged in count one and guilty of possession of cocaine as a lesser included of trafficking in cocaine. The trial court adjudicated Parker guilty, and the court imposed a sentence of five years in prison.
Prior to trial, Parker filed a motion in limine to prevent the State from introducing any testimony concerning prior drug activity, specifically that a confidential informant had purchased cocaine and marijuana from him on two prior occasions. At the hearing on the motion, the State conceded that a Williams[1] rule notice had not been filed. The trial court granted the motion. However, at a subsequent hearing, the trial court revisited the issue after the State filed a Williams rule notice. The State argued that the evidence of the prior transactions was admissible to explain the entire context of events leading up to the search warrant, and to demonstrate the reliability of Parker's identification. The trial court found that the evidence of the prior drug transactions was admissible because it was inextricably intertwined with the charged offenses and that it was also admissible pursuant to Williams rule.
At trial, the following evidence was introduced. On March 7, 2007, Detective Valdes was working with a confidential informant to do a controlled buy at a Miami residence. Detective Benovites testified that he and Detective Valdes drove to the residence in an undercover vehicle. They set up surveillance and then advised the officer accompanying the confidential informant, Detective White, whether they should approach the house for a controlled buy. The confidential informant thereafter approached the residence in a second vehicle driven by Detective White. Detective Valdes and Detective Benovites observed the confidential informant walk up to the residence, approach a male who was outside the residence, and hand him money. *968 The male was identified in court as Parker. Parker entered the residence for a couple of seconds, and then he exited and handed the confidential informant a clear plastic bag containing powder cocaine and a clear plastic bag containing marijuana. Upon the completion of the controlled buy, the confidential informant walked away from the residence. Both Detective White and Detective Valdes secured custody over the baggies. The items were later field tested for the presence of narcotics.
On March 12, 2007, Detective Valdes, Detective Benovites, and the confidential informant conducted a second controlled buy on the residence. The detectives observed the confidential informant approach Parker and hand over money. Parker entered the residence, exited the residence, and then he handed the confidential informant a small bag of powder cocaine. Detective Benovites recalled that the confidential informant remained outside of the residence during the transaction. The confidential informant then got into the vehicle driven by Detective White, and at a later time, the confidential informant handed over the items to Detective Benovites. After leaving the premises, Detective Benovites field tested the substance for the presence of narcotics. Detective Valdes and Detective Benovites thereafter procured a search warrant.
A few weeks prior to the execution of the search warrant, Detective Valdes conducted surveillance of the residence. During that time, he observed a young black male approach the residence with a dark colored book bag with a strap. The male entered the residence carrying the bag, and then he exited without the bag.
On March 15, 2007, the police executed a search warrant on the residence. Detective Valdes observed a large black male, later identified as Parker, in front of the residence. Parker ignored the police's command to get down on the ground, and he ran towards the residence. Officer Mellie, a SWAT team member, testified that it appeared that Parker carried an item in his hand. Parker ran inside and attempted to close the door. Approximately ten to fifteen seconds after Parker entered the residence, Officer Mellie breeched the door, and immediately yelled for Parker to show his hands. Parker complied and opened his hands, at which time some money and small baggies with white powder and marijuana fell to the ground by his feet. Sergeant Malgor, another SWAT team member, also observed several plastic baggies laying on the floor of the room where they had detained Parker. Officer Mellie detained Parker. The only other person present at the residence, besides Parker, was his grandmother.
A search of the residence led to the discovery of a cloth bag located inside a closet. This bag was similar to the one that Detective Valdes had previously observed being carried in by the young black male a few weeks prior. No one ever observed Parker in control over the bag. Also inside the closet were clothes for a very large person. The bag contained 339 baggies of cocaine and 212 baggies of marijuana. Additionally, the bag contained over $10,000 dollars in cash. During trial, Officer Mellie testified that she examined each of the 212 baggies of marijuana, and that each baggie had the odor and characteristics of marijuana. Ingrid Corbin, a criminalist with the Miami-Dade Police Department, testified that the items taken from Parker's residence tested positive for cocaine and marijuana.
At the close of the State's case in chief, Parker moved for judgment of acquittal. He argued that the State failed to prove chain of custody. Additionally, he argued that the evidence of the prior sales should not have been introduced because the baggies *969 were not strikingly similar to the baggies found in the residence during the search warrant. He further argued that the State failed to prove exclusive possession over the drugs found in the black bag. The trial court denied the motion for judgment of acquittal. The trial court found that the baggies obtained during the controlled buy and the baggies found in the residence during the execution of the search warrant were "virtually identical," and that the only potential difference was the height of the baggie.
Parker's aunt, Atalie Griffin, testified at trial. She also resided at the residence that was the subject of the search warrant. Griffin stated that in addition to herself and Parker, her son James Griffin and Parker's grandmother, Nancy Williams, also resided at the residence. On the day that the police served the search warrant, she was present, along with her boyfriend, her niece Chrisha, and her mother. She neither observed Parker with the black bag nor did she observe him dealing drugs on the day on which the police executed the search warrant. She further testified that the house constantly had people coming and going and was a very active household.
Nancy Williams, Parker's grandmother, testified. She denied having seen Parker with a black bag on the day on which the police executed the search warrant. She admitted that she saw the black bag before, that other individuals would bring the bag with video games. Williams stated that the closet where the black bag was found is a communal closet.

2. Analysis

We first recognize that the trial court has broad discretion when it determines the relevance of evidence, and that such a determination will not be disturbed absent an abuse of discretion. See Heath v. State, 648 So.2d 660, 664 (Fla.1994). When an appellate court reviews an order denying a motion for judgment of acquittal, the standard of review is de novo. See Jean-Marie v. State, 947 So.2d 484, 487 (Fla. 3d DCA 2006). Upon de novo review, "the appellate court must consider the evidence and all reasonable inferences therefrom in a light most favorable to the State, to establish, as a matter of law, that the evidence is legally adequate to support the charge." Id. at 487.
We now turn to the introduction of the two prior transactions and conclude that the trial court erred when it allowed the State to present evidence of these two prior transactions. It is widely recognized that evidence which is relevant is generally admissible, unless the law precludes its introduction. See § 90.402, Fla. Stat. (2008). Relevant evidence is defined as evidence that tends to prove or disprove a material fact. See § 90.401, Fla. Stat. (2008). However, relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading of the jury, or needless presentation of cumulative evidence. See § 90.403, Fla. Stat. (2008).
In Dorsett v. State, 944 So.2d 1207, 1212 (Fla. 3d DCA 2006), this Court stated that "collateral crimes evidence" is a term commonly used to refer to evidence of bad acts that is not included in the charged offenses. Collateral crimes evidence includes: (1) similar fact evidence (commonly referred to as Williams rule evidence), and (2) all other admissible relevant evidence. Id. Section 90.404, Florida Statutes (2008), governs the admissibility of Williams rule evidence.
Under section 90.404, similar fact evidence is evidence that is unrelated to the charged offenses. This evidence is admissible to prove a material fact in issue, such *970 as motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Dorsett, 944 So.2d at 1212. Section 90.402, governs the admissibility of evidence that is unrelated to the charged offense, including evidence that is inextricably intertwined.
As we stated in Dorsett, evidence is inextricably intertwined if the evidence is necessary to: (1) adequately describe the deed; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged crimes(s). Id. at 1213. Section 90.402, governs the admission of inextricably intertwined evidence.
A review of the introduction of the two prior transactions neither constituted admissible Williams rule evidence nor inextricably intertwined evidence. The two prior transactions were totally unrelated to the charged offenses. These two prior transactions occurred days prior to the occurrence that gave rise to the charged offenses. Additionally, the nature of the two prior transactions differed from the nature of the charged crimes. The two prior transactions involved actual drug sales and the charged offenses involved the crime of possession. Moreover, the two prior transactions were not relevant to any material issue of fact because the prior transactions did not prove that Parker had dominion or control over the drugs the police recovered that formed the basis of the charged crimes.
Furthermore, the admission of evidence of the two prior transactions was highly prejudicial. "When evidence of prior crimes is wrongly admitted, it is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged." Dorsett, 944 So.2d at 1219-20 (citations omitted).

3. Conclusion

For these reasons, we thus conclude that the trial court committed error when it permitted the introduction of the two prior transactions. We therefore reverse Parker's final judgment of conviction and sentence, and remand this case for a new trial.
SUAREZ, J., concurs.
SHEPHERD, J., dissenting.
I respectfully dissent.
Parker's defense in this case was that the bag was not histhat, as the defense argued in closing, the police were "mistaken" to focus on Parker as the trafficker.[2] It is apodictic that evidence of prior offenses is admissible when relevant to prove "absence of mistake." Williams v. State, 110 So.2d 654, 662 (Fla.1959); Dorsett v. State, 944 So.2d 1207, 1212 (Fla. 3d DCA 2006). The evidence of the controlled buys is directly relevant to rebut the defendant's assertion of "mistake." The only baggies of drugs found in the house were in the bag in the closet. The baggies obtained during the two controlled buys were "virtually identical" in size, transparency, and all other respects to the baggies in the bag. Clothing for a "large man" was found in the same closet as the bag. The defendant is 6'5" tall and weighs 350 pounds.
*971 In a constructive possession case, the State's burden "is to show beyond a reasonable doubt that the defendant [1] knew of the presence of the contraband and that he [2] had the ability to exercise dominion and control over it." Jackson v. State, 995 So.2d 535, 539 (Fla. 2d DCA 2008); see also Chicone v. State, 684 So.2d 736, 738 (Fla.1996), superseded by statute on other grounds as stated in Whitehurst v. State, 852 So.2d 902, 903 (Fla. 2d DCA 2003). The evidence of the controlled buys in this case, especially considered in the context of evidence indicating the presence of Parker's clothing, is probative of whether Parker knew of the presence of the contraband and had the ability to exercise dominion and control over it. The trial court did not abuse its discretion by permitting the jury to consider this evidence on the possession element of the State's case.
It is certain the evidence of the prior transactions is "prejudicial," maybe even "highly prejudicial," as emphasized by the majority. See supra p. 970. However, prejudice is not the test. Under such a test, evidence of prior crimes would always be excluded. Instead, as the Florida Supreme Court stated in Williams, 110 So.2d at 662, "relevancy is the test." "If found to be relevant for any purpose save that of showing bad character or propensity, then [the evidence] should be admitted." Id. Moreover, contrary to the majority's unsupported assertion, see supra p. 970, "[a] collateral crime proven by similar evidence does not need to be absolutely identical to the crime charged in order to be admissible." See Triplett v. State, 947 So.2d 702, 704 (Fla. 5th DCA 2007) (citing Schwab v. State, 636 So.2d 3 (Fla.1994)); see also Evans v. State, 693 So.2d 1096, 1102 (Fla. 3d DCA 1997) (holding that where accused is charged with physical abuse of a child, and the State seeks to present evidence of prior physical abuse committed by the accused upon the same child for purposes of proving absence of mistake, there is no need for factual similarity between the charged offense and prior abusive conduct beyond the existence of physical abuse in all instances). In fact, the test for the admissibility of collateral crimes evidence is even more relaxed when the evidence is offered for a purpose other than identity. Triplett, 947 So.2d at 704 (citing Houston v. State, 852 So.2d 425, 426 (Fla. 5th DCA 2003)); Stav v. State, 860 So.2d 478, 480 (Fla. 4th DCA 2003). The evidence of the controlled buys is directly relevant to the charge of trafficking in this case.
The conviction should be affirmed.
NOTES
[1] Williams v. State, 870 So.2d 71 (Fla. 2d DCA 2003).
[2] In support of this defense, the defense called Parker's aunt, grandmother, and cousin to testify the house was a veritable revolving door of law abiding relatives, including according to themthe defendant. The defendant exercised his constitutional right not to testify.