CLARK, J.,
dissenting.
I respectfully dissent. The admission of the irrelevant evidence of Appellant’s involvement with drugs and the State’s emphasis on this evidence at trial denied Appellant a fair trial on the charges. While Appellant was not entitled to a perfect trial, he was entitled to a fair one. See Matthews v. State, 772 So.2d 600 (Fla. 5th DCA 2000).
A defendant is presumed innocent until proven guilty. In contrast to the legal systems of some nations, “[i]n this country, a person ... must be tried for his conduct, not his character — i.e., for ‘what he did, not for who he is.’ United States v. Myers, 550 F.2d 1036, 1044 (5th Cir.1977).” Jeffrey Cole, “Bad Acts” Evidence in Civil Cases Under Rule JfiMb): It’s Not Just For Prosecutors Anymore, 37 No. 3 Litigation, Spring 2011, at 47, 48. The trial court’s denial of the motions in limine in this ease allowed the State to try Appellant for his character — as a gun-toting, drug-selling, juvenile delinquent evil-doer to whom ordinary rules of reasonableness and self-defense did not apply — rather than for what he did. The State proceeded on a theory that Appellant was not eligible to assert self-defense because he was a drug dealer with no legitimate business in the neighborhood and certainly no legitimate fear of the victim.
*864 The trial court abused its discretion by denying the motions in limine. Dessaure v. State, 891 So.2d 455 (Fla.2004) (standard of review for rulings on motions in limine is abuse of discretion); Leon v. State, 68 So.3d 351 (Fla. 1st DCA 2011). During the trial, it was reversible error to admit the evidence of possible drugs found at Appellant’s residence weeks after the shooting; Appellant’s sales of drugs at any time; and that Appellant was in the neighborhood at the time of the shooting in order to collect a drug debt from State’s witness Rawlinson. This error, combined with the other improper character evidence allowed, amounted to fundamental error by depriving Appellant of a fail' trial.
First, the evidence sought to be excluded was not relevant, and thus not admissible. Appellant was not charged with any drug offense. “Relevant evidence is evidence tending to prove or disprove a material fact.” § 90.401, Fla. Stat. The evidence of white powder found in a drawer where Appellant resided approximately six weeks after the shooting was in no way connected to the murder or the defense of self-defense. Likewise, the evidence given by State’s witness Rawlinson about his drug transaction with Appellant did not tend to prove or disprove a fact material to any element of murder of Mr. Lloyd or Appellant’s claim of self-defense. Mr. Lloyd was not a drug customer and there was no evidence indicating that drugs were present or a factor during the shooting incident. Because Appellant’s defense at trial was that he shot Lloyd in self-defense, his identity,' motive, opportunity, knowledge, and lack of mistake or accident were effectively admitted, and thus not material facts at issue. The evidence of Appellant’s involvement in drug sales at times other than the day of the shooting, particularly several weeks after the shooting when the drawer was photographed, and evidence of Appellant’s drug-related interaction with persons other than the deceased was offered solely to show Appellant’s bad character and propensity to commit crimes. This evidence was thus not admissible. § 90.404(2)(a), Fla. Stat.; Agatheas v. State, 77 So.3d 1232 (Fla.2011) (revolver found in defendant’s backpack upon his arrest 5 yrs. after the murder not relevant to the crime or as corroboration of witness’ testimony; State cannot rely on law of impeachment to introduce impermissible collateral crimes evidence).
Second, any minimal relevance of the evidence pertaining to Rawlinson’s drug purchase and the general circumstances prior to Appellant’s shooting of Mr. Lloyd was clearly outweighed by the “danger of unfair prejudice, confusion of issues, [or] misleading the jury.” § 90.403, Fla. Stat. Actual confusion of the issues and misleading of the jury were demonstrated in the record of this case by the jury’s mid-deliberation question about the legality of Appellant’s pursuit of payment for a drug sale to the witness — not the victim — at the time of the incident. As noted above, the material facts at issue in the trial were not whether Appellant was a drug dealer or had committed other bad acts at other times with other people, but whether or not Appellant shot Mr. Lloyd in self-defense.
Third, neither the photograph of the drawer containing white powder nor the testimony about Rawlinson’s earlier drug transaction with Appellant, constituted “similar . fact evidence of other crimes, wrongs, or acts,” commonly referred to as “Williams Rule” evidence,[3] admissible under section 90.404(2)(a), Florida Statutes. For evidence of other crimes to be admissible, the evidence must be relevant due to *865 “a close similarity of facts, a unique or ‘fingerprint’ type of information.” State v. Savino, 567 So.2d 892, 894 (Fla.1990). Evidence of Appellant’s drug activity is not similar to the shooting charged here. See McCray v. State, 71 So.3d 848 (Fla.2011) (collateral crime evidence that McCray was a drug dealer arrested at murder site was not similar fact evidence, thus s. 90.404, Fla. Stat. did not apply; only general rule of relevancy applied). Because Appellant was not on trial for any drug offense, the evidence in question was not “Williams rule” evidence and the State’s presentation of this evidence could not be remedied by the “Williams rule” instructions to the jury. Not only was the evidence of Appellant’s drug activities not “similar fact” evidence in relation to the offenses charged, it was “relevant solely to prove bad character or propensity” and was thus inadmissible under section 90.404(2)(a), Florida Statutes.
The evidence pertaining to Appellant’s drug activity generally and with witness Rawlinson in particular did not tend to prove or disprove Appellant’s motive for shooting Mr. Lloyd. This case is not similar to those cases where motive for murder was a material issue and the victim’s participation in the defendant’s drug activities produced the motive. Jackson v. State, 25 So.3d 518 (Fla.2009) (evidence that defendant sold drugs was relevant to support motive; state’s theory was that victim stole defendant’s drugs and money); Jorgenson v. State, 714 So.2d 423 (Fla.1998) (evidence that victim assisted defendant in drug sales, stole from defendant, and threatened to turn defendant in if defendant cut off victim’s drug supply was relevant and admissible to support motive under s. 90.402, Fla. Stat.); see also McCray v. State, 71 So.3d 848 (Fla.2011) (though s. 90.404, Fla. Stat. did not apply, evidence was relevant under s. 90.402 to prove McCray’s motive for charged crimes — revenge for victims’ role in his previous drug arrest).
Even if the evidence challenged here had any probative value to show the general circumstances of Appellant’s presence in the neighborhood or his mental state at the time of the shooting, the evidence of Appellant’s drug-related activities was im-permissibly made a “feature of the trial” by the State. As explained in Peterson v. State, 2 So.3d 146, 155 (Fla.2009), relevant evidence of collateral crimes impermissibly becomes a feature of the trial when the evidence “transcends the bounds of relevancy to the charge being tried” and the prosecution “devolves from development of facts pertinent to the main issue of guilt or innocence into an assault on the character of the defendant.” The charges in this case were not drug-related offenses. Nonetheless, the State was allowed to introduce Appellant’s statement to police, which, though partially redacted, retained references to Appellant’s past drug activities. The State also introduced extensive testimony of Ronald Rawlinson about his arrangement with Appellant to obtain cocaine and pay Appellant afterwards. Finally, the State introduced the testimony of an investigator who searched Appellant’s residence several weeks after the shooting and photographed a drawer containing a white powder and a gun which was never alleged to be the murder weapon. The investigator did not test the powder, but surmised in his testimony that it was cocaine.
In addition, the prosecutor’s cross-examination of Appellant was dominated by questions regarding his drug business, as illustrated by the following excerpt:
THE STATE: Sir, when you engage in the business of selling drugs, you have to be careful about who’s the police and who’s a customer?
*866 DEFENDANT: Yes, sir.
DEFENSE COUNSEL: Objection, compound question.
THE COURT: I’ll overrule that.
THE STATE: Is that a yes?
DEFENDANT: Yes, sir.
THE STATE: And when you met Mr. Rawlinson, obviously he would have been a potential customer?
DEFENDANT: Yes, sir.
THE STATE: And, of course, in that business you would need to get new customers when you can; right?
DEFENDANT: Yes, sir.
THE STATE: Okay. Because some of the old ones might get clean; right?
DEFENSE COUNSEL: Objection, speculation.
THE COURT: I’ll overrule.
THE STATE: You lose customers because they get off crack, as Mr. Rawlin-son did?
DEFENDANT: I mean, not necessarily-
THE STATE: Okay. Has that ever happened in your experience?
DEFENDANT: Yes, sir.
THE STATE: Okay. Some of them die; right?
DEFENDANT: I would guess so.
THE STATE: Some of them get arrested?
DEFENDANT: Yes, sir.
DEFENSE COUNSEL: Objection, calls for speculation, Judge.
THE COURT: I’ll overrule.
THE STATE: Is that a yes?
DEFENDANT: Yes, sir.
THE STATE: And some of them occasionally might use a competitor of yours, right, they might get their cocaine somewhere else?
DEFENDANT: Yes, sir.
THE STATE: Would it be, then, sir, the good business plan to, as you did, front cocaine to someone like Mr. Rawlinson in the hopes that you could make them into a new customer?
DEFENDANT: Yes, sir.
THE STATE: Okay. Because the profit you might make from future sales might outweigh the risk of fronting him; right?
DEFENDANT: Yes, sir.
THE STATE: And the typical rock that you might sell someone weighs about what, a tenth of a gram?
DEFENDANT: Yes, sir.
THE STATE: Now, when you are in the business of selling drugs, though, you have to keep both the drugs and the money usually on your person or nearby; right?
DEFENDANT: In a sense.
THE STATE: Okay. And you also have to worry about getting robbed or jacked, you know, either by people who want the drugs, people who want the money, or other dealers and stuff like that, right, that’s a concern?
DEFENDANT: Yes, sir.
THE STATE: Okay. So part of the making sure that you can be secure is having weapons and ammunition available or on you; right?
DEFENDANT: In a sense.
THE STATE: Okay. Part of it also is kind of having a reputation that will maybe keep you from getting messed with in the first place; right? People less likely to jack you if they are afraid? Yes? No? You don’t know?
DEFENDANT: I don’t know.
THE STATE: Okay. You would agree with me, though, that it is not sort of a good business model to front a drug *867 user and then let him get away without paying you?
DEFENDANT: That depends on — I don’t know.
THE STATE: Depends on what?
DEFENDANT: It depends on the dealer.
THE STATE: Okay. Would you ever let that happen?
DEFENDANT: I mean, it has, it’s happened.
THE STATE: Okay. And you just let them walk away and didn’t care?
DEFENDANT: I mean, it depends on how much money it is. But what can I do?
THE STATE: Let me ask you, the only reason you went down Sue Lane the next day was in fact to do exactly that, collect the money that you had fronted?
DEFENDANT: Yes, sir.
THE STATE: Okay. And it’s also not good business when you’re in that line of work to let somebody embarrass you, kind of punk you, make you look bad in front of your customers; right?
DEFENDANT: Why would that be? THE STATE: That would be bad for business?
DEFENDANT: I don’t understand why.
THE STATE: You don’t think that would be bad for business?
DEFENDANT: What does somebody punking you have to do with you—
THE STATE: Do you think that makes it more or less likely that you would have a reputation?
DEFENDANT: A reputation of — ?
THE STATE: We talked about earlier, you don’t think when something happens in front of your customers — never mind. You know what, we’ll just go on.
THE STATE: You would agree with me that when you’re dealing drugs it kind of makes sense to take some precautions in case you run into the police?
DEFENDANT: Yes, sir.
THE STATE: What sorts of precautions would be necessary?
While discounted by the majority as “only a few pages in a nearly 700 page transcript,” the State was allowed to continue this line of questioning for several more pages as transcribed, without any reference to Appellant’s interaction with the victim during the shooting incident. Finally, during closing argument, the State referenced Appellant’s status and expertise as a drug dealer no less than fourteen times, arguing to the jury that self-defense was not available to law breakers and that the reasonable person standard did not equate to what was reasonable for a drug dealer. Defense counsel’s objections to the argument were overruled.
I disagree with the majority’s conclusion that the State’s evidence of Cameron Holmes’ drug activities was admissible as “inextricably intertwined” collateral crime evidence. The evidence sought to be excluded in the second motion in limine— that the defendant sold drugs at any point and that defendant was attempting to collect a drug debt from Mr. Rawlinson at the time he shot Mr. Lloyd — was not evidence of an inseparable crime “inextricably intertwined” with the charged crime. See Canion v. State, 793 So.2d 80, 81 (Fla. 4th DCA 2001). This is not a case where the evidence of uncharged crimes is admissible because “it is a relevant and inseparable part of the act which is in issue” and “it is necessary to admit the evidence to adequately describe the deed.” Griffin v. State, 639 So.2d 966, 968 (Fla.1994); see also, Thomas v. State, 959 So.2d 427 (Fla. 2d DCA 2007); Dorsett v. State, 944 So.2d 1207 (Fla. 3d DCA 2006). Here, the evidence of Appellant’s involvement with drugs and his previous contact with wit *868 ness Rawlinson was separate from and extraneous to the altercation with Mr. Lloyd and the crimes with which Appellant was charged. See Parker v. State, 20 So.3d 966 (Fla. 3d DCA 2009) (reversing convictions for possession of drugs; evidence of prior drug transactions was not relevant to or inextricably intertwined with charged drug crimes). The evidence was not necessary to adequately describe the shooting or the moments immediately preceding it, when self-defense might have come into play. Mr. Rawlinson could easily have told his story without saying why he owed Appellant money, and Appellant’s redacted statement to the police could easily have been further redacted to omit references to past bad acts not charged in this case. Appellant’s credibility could easily have been challenged without reference to any drug activity and the State presented no link at all between the charge of murder of the victim and the powder found in a drawer at Appellant’s residence several weeks after the shooting. The exclusion of the evidence at issue would not have “unreasonably hampered” the State in explaining how the charged crime took place. See McCall v. State, 941 So.2d 1280 (Fla. 4th DCA 2006).
For all the foregoing reasons, Appellant is entitled to a new trial. I would reverse.

. Williams v. State, 110 So.2d 654 (Fla.1959).