SWANSON, J.
 

 In this direct criminal appeal from his judgment of conviction and consecutive life sentences for attempted second-degree murder and kidnapping, appellant contends the trial court erred in allowing certain state witnesses to testify at trial on subjects appellant had earlier sought to exclude by filing three pretrial motions in limine ultimately denied by the trial court. We review a trial court’s ruling on the admissibility of evidence under an abuse of discretion standard. However, a trial court’s discretion is limited by the evidence code and applicable case law, and a court’s erroneous interpretation of those authorities is subject to
 
 de novo
 
 review.
 
 Pantoja v. State,
 
 59 So.Sd 1092, 1095 (Fla.2011) (quoting
 
 McCray v. State,
 
 919 So.2d 647, 649 (Fla. 1st DCA 2006)). Applying these standards, we conclude the trial court correctly applied the law, with one minor exception, in denying appellant’s motions in limine and, therefore, did not abuse its discretion in admitting the testimony. As for the exception, concerning a book on taxidermy, we conclude the error was harmless beyond a reasonable doubt.
 

 Appellant argues first that the trial court erred in allowing state witnesses to testify they never saw him again following the commission of the crimes. The state’s purpose in eliciting this testimony was to establish evidence of appellant’s flight from which the jury could infer consciousness of guilt. Appellant argues the evidence was not relevant to prove appellant committed the charged crimes. We disagree.
 

 It is well-established that evidence of flight may be probative of guilt, but courts must carefully consider the connection between the evidence and the charged crime or crimes prior to admitting it, as recently acknowledged by the supreme court in
 
 Twilegar v. State,
 
 42 So.3d 177 (Fla.2010):
 

 “We agree, as an abstract rule of law, that evidence of flight, concealment, or resistance to lawful arrest after the fact of a crime is admissible as “being relevant to consciousness of guilt which may be inferred from such circumstances.”
 
 Straight v. State,
 
 397 So.2d 903, 908 (Fla.1981). However, in applying this principle to a particular case,
 
 there must be evidence which indicates a nexus between the flight, concealment, or resistance to lawful arrest and the crime(s) for which the defendant is being tried in that specific case.
 
 This is necessary in the application of this rule of law since the evidence creates an inference of a consciousness of guilt of the crime for which the defendant is being tried in that case.
 
 See Merritt v. State,
 
 523 So.2d 573, 574 (Fla.1988).
 
 The ultimate admissibility issue is the relevance to the charged crime.”
 

 Id.
 
 at 196 (quoting
 
 Escobar v. State,
 
 699 So.2d 988, 995 (Fla.1997)) (emphasis in original). The supreme court in
 
 Twilegar
 
 went on to reiterate an earlier-noted “caveat”:
 

 [T]he cases in which flight evidence has been held inadmissible have contained particular facts which tend to detract from the probative value of such evidence. For instance, the probative value of flight evidence is weakened: 1) if the suspect was unaware at the time of the flight that he was the subject of a criminal investigation for the particular crime charged; 2) where there were not clear indications that the defendant had in fact fled; or, 3) where there was a significant time'delay from the commission of the crime to the time of flight. The interpretation to be gleaned from
 
 *354
 
 an act of flight should be made with a sensitivity to the facts of the particular case.
 

 Id.
 
 (quoting
 
 Bundy v. State,
 
 471 So.2d 9, 21 (Fla.1985)). After careful review of the record, we And none of these “caveats” applied below to “weaken” the relevance of the state’s evidence.
 

 The state’s case established that appellant was well-known in the Riverside area of Jacksonville where he was living with his girlfriend in her apartment. This was just two blocks from the location where the victim was found in the early morning hours of July 5, 2008. Witnesses testified appellant was a frequent patron of a nearby bar, the Starlite Café, and had enjoyed an entourage of close friends for several years, including the bar’s owner, its manager, and a bartender who was married to the manager. On the evening of July 4, 2008, appellant, his girlfriend and the victim had been at the Starlite Café where the victim was working as a disc jockey. Appellant and the victim left the bar together around 12:00 a.m., after the victim decided to pack up his equipment early because business had been slow. The Starlite Café’s bar manager, Scott Bran-dle, testified to a telephone call he later received from appellant around 2:00 a.m., in which appellant repeatedly demanded to speak to his girlfriend, who was still at the bar. Brandle testified appellant sounded so alarmingly “labored” and out of breath he was concerned that something had happened to him. His concern was further aroused when he observed the girlfriend’s reaction to the conversation. Brandle recalled she did not speak during the conversation and her face went “blank,” as though “the blood drains out of your face.” Afterwards, she simply put the phone on the bar and “took off.”
 

 Another witness, Maurice Dickerson, testified appellant pulled him outside the bar earlier in the evening to express anger over a crude comment the victim allegedly had made to appellant’s girlfriend. Dickerson described appellant as “livid,” and testified appellant stated he had “killed for less stuff than this.” Appellant advised Dickerson to warn the victim “he better not walk near me because if he does ... I’m afraid of what I’m going to do to him.” Dickerson never passed this warning on to the victim.
 

 These and other witnesses testified appellant was the last person the victim was seen with before he was discovered around 2:30 a.m., beaten, blinded, and lying in a pool of his own blood in the middle of a road less than four-tenths of a mile from the Starlite Café. Afterward, witnesses testified that neither appellant nor his girlfriend was seen in the Riverside area again. Efforts by law enforcement to locate appellant’s girlfriend on July 18, 2008, revealed she had moved from her apartment. On August 14, 2008, appellant was apprehended in New Orleans.
 

 We conclude this evidence provided a clear nexus between appellant’s flight and the charged crimes. After hearing the testimony of the state’s witnesses, the jury reasonably could have inferred that appellant was aware of the crimes which had been committed and fled Jacksonville shortly, if not immediately, after their commission. Appellant has failed to demonstrate the relevance of his flight was weakened by any of the considerations enumerated in
 
 Twilegar.
 
 Instead, the state presented ample evidence to show the reason for appellant’s flight to New Orleans “was to avoid being held accountable for the crime[s] at issue.”
 
 Ford v. State,
 
 801 So.2d 318, 320-21 (Fla. 1st DCA 2001) (citing
 
 Thomas v. State,
 
 748 So.2d 970, 982 (Fla.1999), and
 
 Escobar,
 
 699 So.2d at 995). Thus, as did the supreme court in
 
 Twilegar,
 
 we hold the trial court did not
 
 *355
 
 abuse its discretion in admitting the evidence of appellant’s flight following the crimes, “for the court reasonably may have concluded that the probative value of the evidence was not substantially outweighed by the danger of prejudicing or misleading the jury.” 42 So.3d at 197.
 

 Appellant also argues the trial court erred in allowing Alexander Ahlf, appellant’s cellmate at the county jail, to testify to certain statements appellant made to Ahlf, contending the statements were irrelevant or, if relevant, were so prejudicial that they presented a danger of prejudicing, confusing or misleading the jury. As a rule, “[a]ll relevant evidence is admissible, except as provided by law.” § 90.402, Fla. Stat. (2008). “Relevant evidence is evidence tending to prove or disprove a material fact.” § 90.401, Fla. Stat. (2008). A trial court “ ‘has broad discretion in determining the relevance of evidence.’ ”
 
 Bartlett v. State,
 
 993 So.2d 157, 163 (Fla. 1st DCA 2008) (quoting
 
 Slocum v. State,
 
 757 So.2d 1246, 1250 (Fla. 4th DCA 2000)). Nonetheless, a trial court should exclude even relevant evidence if the probative value of the proffered evidence “is substantially outweighed by the danger of unfair prejudice, confusion of issues, [or] misleading the jury[.]” § 90.403, Fla. Stat. (2008).
 
 See also Joyner v. State,
 
 4 So.3d 76, 78 (Fla. 1st DCA 2009) (quoting
 
 Bartlett,
 
 993 So.2d at 165). Here, we find the trial court did not abuse its discretion in allowing Ahlfs testimony, and properly applied the balancing test contained in section 90.403. While not in the strictest sense a “confession,” appellant’s comments to Ahlf manifested a strong indication of his connection to the crimes. The trial court correctly concluded they were relevant for submission to the jury, subject to the weight the jury would accord them.
 

 The trial court’s decision to allow Ahlf to testify about the book on taxidermy in appellant’s possession in the jail cell is a different matter. Ahlfs testimony regarding material contained on pages that had been “dog-eared” bore no probative value, and the trial court abused its discretion in admitting it. Nevertheless, after applying the harmless error analysis of
 
 State v. DiGuilio,
 
 491 So.2d 1129 (Fla.1986), we are persuaded the state has demonstrated this error was harmless beyond a reasonable doubt. While touched upon during Ahlfs testimony and in the prosecutor’s closing argument, the subject of the book never became a feature of the trial, which focused, instead, on the strength of the testimony of the victim and of witnesses closest to appellant on the night and in the early morning hours of July 4 and 5, 2008. Our review of the entire record convinces us “that there is no reasonable possibility that the error contributed to [appellant’s] conviction.”
 
 Id.
 
 at 1135.
 

 Likewise, we reject appellant’s final contention that the trial court erred in allowing certain testimony from Teehan-Kristin Kaye. Kaye worked as the bartender at the Starlite Café on July 4, 2008, was Brandle’s wife, and was also counted amongst appellant’s friends. She testified to a conversation she had with appellant when he called her at home sometime after 2:00 a.m., on July 5. Kaye described the call as a “rush of information” from appellant that did not make sense, and in which he asked whether he needed to “take care” of anything for either the owner of the bar or her husband. Appellant argues Kaye’s testimony on this point was irrelevant and speculative. We disagree. Kaye’s narrative of the conversation was consistent with Brandle’s testimony in describing appellant’s agitation and sense of urgency within the time frame of the commission of
 
 *356
 
 the crimes. Her testimony was also relevant to establish a nexus between appellant’s flight and the crimes. As with Ahlf s testimony, the trial court properly concluded appellant’s objection to Kaye’s testimony went to the weight the jury should accord it, and not to its admissibility. Accordingly, we find the trial court did not abuse its discretion in admitting her testimony on this subject.
 

 Based on the foregoing discussion, we hold appellant has failed to demonstrate any cause for reversal. Accordingly, his judgment of conviction and sentences are hereby AFFIRMED.
 

 HAWKES and CLARK, JJ., concur.