NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

FABIAN DEMETRICK WILLIAMS, )
)
Appellant, )
)
v. ) Case No. 2D14-4011
)
STATE OF FLORIDA, )
)
Appellee. )
_____)

Opinion filed August 24, 2016.

Appeal from the Circuit Court for
Hillsborough County; Emmett Lamar
Battles and Lisa D. Campbell, Judges.

Howard L. Dimmig, II, Public Defender,
and Marie-Louise Samuels Parmer,
Special Assistant Public Defender, Bartow,
for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Bilal A. Faruqui,
Assistant Attorney General, Tampa, for
Appellee.

SILBERMAN, Judge.

Fabian Demetrick Williams seeks review of his judgment and sentences

for robbery with a firearm, felony murder, and two counts of attempted robbery with a

firearm. Because the evidence was insufficient to support one charge of attempted

robbery, we reverse the conviction on that count. And because the trial court admitted

evidence of Williams' "flight" without a sufficient nexus between the flight and the pending criminal investigation, we reverse and remand for a new trial on the remaining charges.

Just before midnight on April 5, 2012, two men brandishing guns ran up to Myron Stokes and Michael Gilbert outside of Stokes' "party house" in Progress Village. One of the men demanded money from Stokes. When Stokes did not immediately respond, the man said, "Do you want to die?" The man ordered Stokes and Gilbert to lie on the ground, and they complied. The man then went through Stokes' pockets, removed his wallet, and removed the cash. Apparently unsatisfied with the amount, the man demanded more money. Stokes said he had more in his house, and the man told Stokes to get up and go inside. The man told his accomplice to watch Gilbert who was still lying on the ground.

As the man walked Stokes into the house at gunpoint, Stokes' cousin Eugene Ghent was walking out. Ghent attempted to brush past the two men but stopped when the robber turned his gun on Ghent. Ghent recognized the robber as someone Ghent had played Little League baseball with twenty years before. Ghent thought the men must be playing a joke on him, but the robber said, "You're not going nowhere. . . . I'm not playing." Ghent was surprised and replied, "For real, Fabian?" The robber hesitated, and Ghent grabbed the gun, turned it toward the robber's chest, and pushed him and the gun out of the house. The robber tripped over a bicycle that was near the door and dropped the gun. As Ghent stumbled out behind the robber, he saw the robber's accomplice standing over Gilbert with a gun. The accomplice briefly

- 2 -

turned his gun on Ghent, and Ghent took off. As Ghent was running away, he heard gunshots.

Stokes took advantage of the distraction and ran to the kitchen to warn his other guests. Stokes and his guests fled out the back door. Stokes ran to the next street; he too heard gunshots as he was running away. Meanwhile Ghent reached his nearby home and called 9-1-1 from a cell phone. He stayed on the phone with the 9-1-1 operator as he walked back to the scene.

By the time the police arrived, the robbers had left the scene and Stokes and Ghent had returned. Stokes found Gilbert lying on the ground and gasping for breath. Gilbert had been shot multiple times in his legs and buttocks, and he died at the scene. Deputy Lucius arrived on the scene and interviewed Ghent and Stokes. Both men told him the robber was named "Fabian." Ghent and Stokes were taken to the police station where they positively identified a photograph of Fabian Williams.

Detective Hollis obtained an arrest warrant for Williams, and he and Deputy Lucius went to Williams' address in Sampson Park the next morning. Williams was not at home. Detective Hollis went to Williams' girlfriend's home, but she did not provide any information about Williams' whereabouts. Despite additional attempts to locate Williams, he was not seen or heard from again until over a year later, on June 4, 2013, when he was arrested in Sylvester, Georgia. Williams' accomplice was never identified or located.

The jury found Williams guilty of the felony murder of Gilbert, robbery with a firearm of Stokes, and attempted robbery with a firearm of Gilbert and Ghent. The court sentenced Williams as a prison releasee reoffender to life in prison for the murder

and completed robbery and to concurrent terms of fifteen years in prison for the attempted robberies. Williams raises two meritorious arguments on appeal: (1) the trial court erred in denying his motion for judgment of acquittal on the charge of attempted robbery with a firearm of Ghent, and (2) the trial court erred in denying his motion in limine to exclude evidence of his "flight" to Georgia.

First, we conclude that the trial court erred in denying Williams' motion for judgment of acquittal on the charge of attempted robbery with a firearm of Ghent. The evidence was insufficient to establish Williams' intent to rob Ghent. There was no evidence that Williams knew Ghent was inside Stokes' home when Williams decided to rob Gilbert and Stokes outside the home. And Williams did not make any statements to Gilbert and Stokes that suggested an intent to rob anyone else. In fact, Williams only entered Stokes' house so <u>Stokes</u> could get more money. Williams' encounter with Ghent inside Stokes' house was brief with Williams pointing a gun at Ghent to keep him from continuing out the door. Williams did not say or do anything to indicate he intended to do anything besides keep Ghent from leaving. Accordingly, the trial court erred in denying Williams' motion for judgment of acquittal on that charge.

The State suggests that the proper remedy upon reversal is to remand with directions for the court to enter a judgment for the permissive lesser-included offense of aggravated assault with a firearm. Section 924.34, Florida Statutes (2014), permits an appellate court to direct entry of a judgment for a permissive lesser-included offense if the jury has determined all the elements of that crime. <u>See</u> <u>State v. Sigler</u>, 967 So. 2d 835, 844 (Fla. 2007). However, aggravated assault with a firearm requires a finding that the defendant actually <u>used the firearm</u> while robbery with a firearm requires

- 4 -

only that the defendant carried a firearm. State v. Baker, 452 So. 2d 927, 928-29 (Fla. 1984), reaffirmed, Taylor v. State, 608 So. 2d 804 (Fla. 1992). While the evidence may have established that Williams used the firearm by turning it on Ghent, the charging document did not allege that Williams used the firearm. And while the jury's verdict for attempted robbery with a firearm satisfies the element of carrying a firearm, this does not establish that the jury found the essential element of aggravated assault that Williams used a firearm. See Coicou v. State, 39 So. 3d 237, 243-44 (Fla. 2010) (holding that it was error to direct entry of a conviction for a permissive lesser-included offense based on the fact that it was supported by the evidence because the greater crime was not charged in a manner that encompassed the intent element of the permissive lesser-included offense and the jury did not make a finding regarding that intent element). Accordingly, we reverse the conviction for this single count with directions for the court to enter a judgment of acquittal.

Second, we conclude that the trial court erred in denying Williams' motion in limine to exclude evidence of his "flight" to Georgia without a sufficient nexus between the flight and the pending criminal investigation. Evidence of flight or concealment after a crime may be admissible to show consciousness of guilt. Twilegar v. State, 42 So. 3d 177, 196 (Fla. 2010). Because evidence of flight creates an inference of consciousness of guilt, it may not be admitted unless there is evidence of a nexus between the flight or concealment to the specific crimes charged. The ultimate issue regarding admissibility is whether the evidence of flight is relevant to the charged crimes. The probative value of evidence of flight is weakened if (1) the suspect was not aware at the time of the flight that he was a suspect in an investigation for the charged

crimes, (2) there were not clear indications of flight, or (3) there was a significant delay in time between the flight and the commission of the crimes. Id.

All three of the factors that weaken the probative value of evidence of flight are present in this case. As to the first factor, there is very little evidence from which it can be inferred that Williams was aware at the time of his "flight" to Georgia that he was a suspect in an investigation for the charged crimes. In fact, it is unknown when Williams even went to Georgia. The State correctly notes that there was evidence that Ghent indicated to Williams at the scene that Ghent recognized him. Additionally, the police did go to both Williams' and his girlfriend's homes looking for him the morning after the crime. If Williams had been discovered in Georgia within a few weeks or even a month after the crimes, the evidence of flight may well have been admissible. See Brown v. State, 756 So. 2d 230, 232 (Fla. 3d DCA 2000) ("We likewise find no abuse of discretion in the instant case where the victims knew Brown by name and the police had been to his house attempting to locate him during the fourteen days between the robbery and Brown's arrest.").

The problem is that Williams was not seen or heard from until fourteen months after the crime when he was arrested in Georgia. While Deputy Lucius patrolled Samspon Park looking for Williams, he did not offer any details supporting his efforts. There was no information that Williams was not at his usual haunts or had not reported for work. And there was no testimony that the police inquired of Williams' family and friends beyond the day after the crime. While Detective Hollis testified that he attempted to locate Williams' friends, family members, and girlfriends, he did not give a time line or indicate that he actually came into contact with any of these people beyond

the day after the crime.  Cf. Diaz-Gonzalez v. State, 932 So. 2d 528, 530 (Fla. 3d DCA 2006) (holding that "a reasonable juror could infer defendant knew of the officer's investigation" for a crime that occurred a few months before his arrest because the investigating officer went to the residence of the defendant's ex-wife, made ten separate visits to the defendant's business during which he informed those present that he wanted to talk to the defendant about something that happened on the date of the crime, and gave this information to the defendant's alibi witness).

This lack of evidence also supports the second factor, that there were not clear indications of flight.  Flight is generally established when the defendant leaves the scene when confronted by the police.  However, the defendant's abrupt relocation to another state can also be evidence of flight.  See, e.g., Twilegar, 42 So. 3d at 196; Leon v. State, 68 So. 3d 351, 353-54 (Fla. 1st DCA 2011).  In such cases, there is generally evidence of some other incriminating behavior.  But in this case, there was no additional evidence beyond Williams' relocation to Georgia at some unknown point in time.

This all ties in with the third factor, that there was a significant delay in time between the flight and the commission of the crimes.  Williams was not seen or heard from for fourteen months until he was arrested in Georgia.  This is a much longer period of time than that in which courts have found a nexus between a relocation to another state and the specific crimes charged.  Cf. Twilegar, 42 So. 3d at 186-87, 196 (considering a two-week time period); Leon, 68 So. 3d at 354 (considering a five-week time period).

Under the totality of the circumstances, the factors that weaken the probative value of evidence of flight make the evidence surrounding Williams' flight in

this case more prejudicial than probative. Thus, the trial court erred in denying Williams' motion in limine to exclude the evidence of flight.

We are not persuaded that any error is harmless. There was no physical evidence linking Williams to the crime, and he was convicted based on identification testimony that was significantly impeached. Stokes and Ghent said that they recognized Williams from Little League baseball, but that was some seventeen years beforehand. Also, Ghent failed to mention Williams by name in the 9-1-1 call even though he testified he recognized Williams as soon as he walked in the door. In fact, at first Ghent told the 9-1-1 operator, "I didn't know who it was." Later in the call he said, "I think I know who the person is." Only after the two men returned to the scene and spoke together did they both positively identify the perpetrator as Fabian Williams. Furthermore, because the evidence of flight established an inference of consciousness of guilt, we simply cannot say that that this evidence did not contribute to the verdict. See State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986) (holding that the harmless error test places a burden on the State to prove "that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction").

Because the evidence was insufficient to support the charge of attempted robbery with a firearm of Ghent, we reverse the conviction on that count and direct the court to enter a judgment of acquittal. And because the trial court admitted evidence of Williams' "flight" without a sufficient nexus between the flight and the pending criminal investigation, we reverse and remand for a new trial on the remaining charges.

Reversed and remanded with directions.

LaROSE and SLEET, JJ., Concur.